**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **BENJAMIN J. RICKER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 24-CV-373-CVE-JFJ** |
| | ) | |
| **STEVEN HARPE, Director,** | ) | |
| | ) | |
| **Respondent.**[1] | ) | |

## RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS

The Attorney General of the State of Oklahoma, Gentner F. Drummond, appearing on behalf of the above-named Respondent, in response to the Petition for Writ of Habeas Corpus on file herein shows the court as follows:

1. Petitioner, Benjamin J. Ricker, an inmate in the custody of the Allen Gamble Correctional Center, has filed with this Court a petition seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. 2).

2. Petitioner is currently incarcerated pursuant to a judgment and sentence entered in the District Court of Craig County, Case No. CF-2017-181, for one count of Lewd Molestation, in violation of Okla. Stat. tit. 21, § 1123(A) (Supp. 2013) ("Count I"); and one count of Possession of Juvenile Pornography, in violation of Okla. Stat. tit. 21, § 1021.2 (2011) ("Count II"). (Exhibit 1, Opinion Denying Certiorari, at 1).[2] On October 22, 2019, Petitioner entered a plea of no contest

---

[1] Because Petitioner is incarcerated at Allen Gamble Correctional Center—a state institution—the proper respondent is the Warden of that institution, Michael Miller.

[2] This opinion was published. *See Ricker v. State*, 519 P.3d 1269 (Okla. Crim. App. 2022). Unless otherwise noted, Respondent's citations to documents filed in the OCCA refer to each document's CM/ECF header pagination.

to each count after the State called two witnesses at trial (Exhibit 2, O.R. II 240-56).[3] Petitioner was represented by one attorney, Mr. Dennis Faubert ("Mr. Faubert"). Petitioner—through counsel—moved to withdraw his plea on October 29, 2019 (Ex. 2, O.R. II at 257-58). In the motion, Petitioner argued that his no contest plea was made "without deliberation, [and] was heavily rushed and overly influenced by his attorney, and his [parents]" (Ex. 2, O.R. II 257). Mr. Faubert stated in the motion that he had "received new information concerning [Petitioner]'s metal [sic] health diagnosis' [sic]," and thus he felt Petitioner was "unable to enter into a knowingly [sic] and voluntary no contest plea" (Ex. 2, O.R. II 258). Further, Mr. Faubert claimed a competency evaluation should be ordered (Ex. 2, O.R. II 258). Further, Mr. Faubert claimed that at the time of Petitioner's plea he did not know Petitioner had been diagnosed with "bipolar disorder, chronic post-traumatic stress disorder, attention deficit disorder with hyperactivity, panic disorder with agoraphobia," as well as "panic disorder" (Ex. 2, O.R. II 258). The hearing on Petitioner's motion to withdraw his plea was initially set for November 19, 2019, but at that hearing Mr. Faubert announced that he had to withdraw due to a conflict, and the Oklahoma Indigent Defense System was appointed (Exhibit 3, Docket Sheet Craig County Case No. CF-2017-181, at 15-16). The state district court also rescheduled the hearing on his application to withdraw his plea for November 26, 2019 (Ex. 3 at 15-16). At the conclusion of that hearing, Petitioner's motion to withdraw his plea was denied (Ex. 3 at 16). A sentencing hearing was held on December 19, 2019, wherein petitioner was sentenced to thirty-five years imprisonment on Count I, and thirty years'

[3] As Respondent will discuss below, the relevant portions of the Original Record from Oklahoma Court of Criminal Appeals ("the OCCA") Case No. C-2019-893 are attached as Exhibit 2. Respondent will refer to the consecutively paginated two volume Original Record as (Ex. 2, O.R. [Vol. #] __); and to the two-volume supplemental Original Record as (Ex. 2, O.R. Supp. [Vol. #] __). All citations to the various Original Record volumes refer to the original pagination, rather than the CM/ECF header pagination.

imprisonment on Count II, those sentences to run consecutively (Ex. 3 at 16; Ex. 2, O.R. II 285-87).

3. Petitioner filed a certiorari appeal challenging the denial of his motion to withdraw his no contest plea to the Oklahoma Court of Criminal Appeals ("the OCCA") (Exhibit 4, Docket Sheet C-2019-893, at 1). Petitioner was initially represented by Ms. Ricki Walterscheid ("Ms. Walterscheid") on appeal, and she filed the Brief of Petitioner, as well as a Motion to Supplement and Application for Evidentiary Hearing on Jurisdictional Claims on October 19, 2020 (Exhibit 5, Brief of Petitioner, at 1; Exhibit 6 Motion to Supplement and Application for Evidentiary Hearing, at 1). In the Brief of Petitioner, Petitioner raised the following propositions:

PROPOSITION I

> THE DISTRICT COURT OF CRAIG COUNTY WAS WITHOUT JURISDICTION TO ADJUDICATE THE CHARGES BROUGHT AGAINST PETITIONER BY THE STATE OF OKLAHOMA.
>
> . . .

PROPOSITION II

> PETITIONER SHOULD BE ALLOWED TO WITHDRAW HIS PLEA WHICH WAS NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY MADE BECAUSE IT WAS ENTERED UNDER DURESS AND AS THE RESULT OF FRUSTRATION, MISUNDERSTANDING, MISAPPREHENSION, AND WITHOUT DELIBERATION AS THE RESULT OF UNSEEMLY HASTE.

(Ex. 5 at 9, 17) (capitalization in original). In support of the first proposition, Petitioner argued that the State did not have jurisdiction over "crimes committed by or against an Indian in Indian Country" (Ex. 5 at 10). Petitioner also argued that the victim ("T.R.") was a registered member of the Cherokee Nation and the crimes occurred within the Cherokee Nation's boundaries (Ex. 5 at 11). In support of the second proposition, Petitioner argued that the recess discussion regarding his plea could "best be characterized as three to five minutes of chaos," and that combined with his

mental health issues prevented him from entering a knowing, voluntary, and intelligent plea (Ex. 5 at 20). He argued further that his plea was involuntary because he was "blindsided and overwhelmed by the unexpected, chaotic, and rushed situation," and that his parents and Mr. Faubert exerted pressure on him to enter a plea (Ex. 5 at 22). In the motion to supplement and application for evidentiary hearing, petitioner attached multiple exhibits purporting to show that T.R. became a registered member of the Cherokee Nation shortly after the incident in this case, and that the victim's address—where the incident occurred—was within the boundary of the Cherokee Nation (Ex. 6 at 15-16). The motion also had a letter from the Cherokee Nation noting that Petitioner was "not a citizen of the Cherokee Nation" (Ex. 6 at 17).

4. On November 6, 2020, the OCCA issued an Order Remanding for Evidentiary Hearing (Exhibit 7, 11/6/20 Order Remanding for Evidentiary Hearing, at 1). The Court explained that Petitioner's claim in Proposition I raised "separate questions regarding: (a) the victim's status as an Indian; (b) whether the crimes occurred in Indian Country; and (c) Petitioner's status as an Indian" (Ex. 7 at 2). The court concluded that these issues required fact-finding, and accordingly remanded the case to the state district court for an evidentiary hearing (Ex. 7 at 2). Further, the court ordered that the state district court make written findings of fact and conclusions of law on the jurisdiction claim, addressing "the status of [T.R.] and Petitioner as Indians," and whether "the crime occurred in Indian Country" (Ex. 7 at 3-4).

5. On remand, the Oklahoma Attorney General's Office entered to assist, filing the Brief of Respondent on Remand on December 22, 2020 (Ex. 2, O.R. Supp. I 6-23). In that brief, the State argued that neither T.R. nor Petitioner were Indians at the time of the offense, and that the State maintained "concurrent jurisdiction over this case" (Ex. 2, O.R. Supp. I 7, 11). Petitioner filed his counseled Brief on Remand on December 28, 2020 (Ex. 2, O.R. Supp. I 24-33). In that

brief, Petitioner argued that T.R.'s mother, Nautasha May Doughty ("Ms. Doughty") was a registered member of the Cherokee Nation since 2002, and that T.R. had "some degree of Indian blood" (Ex. 2, O.R. Supp. I 27-28). Petitioner conceded that he was not a registered member of the Cherokee Nation, but stated he was continuing efforts to "trace his ancestry and to obtain documentation of his lineage" (Ex. 2, O.R. Supp. I 28). Further, Petitioner asserted that his crime occurred within the traditional boundaries of the Cherokee Nation (Ex. 2, O.R. Supp. I 28-33). Then, on January 4, 2021, the parties filed an Agreed Stipulation, stipulating to the following:

1. [T.R.] was born [i]n March . . . 2012.
2. The crimes alleged against Petitioner occurred between March 9, 2016, and June 30, 2017.
3. [T.R.] was enrolled with the Cherokee Nation on July 6, 2017.
4. [T.R.] possesses some degree of Indian blood.
5. [Ms. Doughty], born June 26, 1994, is the biological mother of T.R. She is a registered citizen of the Cherokee Nation as of January 7, 2002.
6. The Cherokee Nation is an Indian Tribal Entity recognized by the federal government.
7. Petitioner . . . is not a member of any federally recognized tribal entity.
8. The defendant's crimes occurred [on] . . . Scraper St., in Vinita, Oklahoma.
9. The above-listed location falls within the geographic area set aside for the Cherokee Nation[.]

(Ex. 2, O.R. Supp. I 39-40). The evidentiary hearing was held the same day (Ex. 2, O.R. Supp. I 41). The state district court issued its Order On Evidentiary Hearing on February 4, 2021 (Ex. 2, O.R. Supp. I 43). First, the court found Petitioner was not an Indian (Ex. 2, O.R. Supp. 44). Regarding T.R.'s Indian status, the court concluded that T.R. "(1) ha[d] some Indian blood and (2) [was] recognized as an Indian by a tribe or the federal government" (Ex. 2, O.R. Supp. I 44-45).

However, the court also found that while T.R. was an Indian, he "was not enrolled at the time of the crime" (Ex. 2, O.R. Supp. I 44-45). In a footnote, the court explained its conclusion on T.R.'s Indian status as follows:

> [Petitioner] argues that the totality of the circumstances to determine Indian status as outlined in [*United States v. Diaz*], 679 F.3d 1183 (May 8, 2012) should apply in this case, if this Court ruled that the victim was not an enrolled member of an Indian tribe at the time of the crime.
>
> The State requested this [c]ourt to determine Indian status of a victim has to be at the time the crime was committed to develop a bright line test for the *McGirt*[4] holding to apply.
>
> This [c]ourt was not tasked to make these findings; rather, this Court was instructed to determine if [T.R.] was enrolled with the Cherokee Nation and possessed some degree of Indian blood.

(Ex. 2, O.R. Supp. I 45). Further, the court concluded that the crime occurred in Indian Country (Ex. 2, O.R. Supp. I 46).

6. The parties filed supplemental briefing with the OCCA following remand, with the State filing the Supplemental Brief of Respondent After Remand on March 1, 2021, and Petitioner filing the Supplemental Brief of Petitioner After Remand on March 30, 2021 (Exhibit 8, Supplemental Brief of Respondent After Remand, at 1; Exhibit 9, Supplemental Brief of Petitioner After Remand, at 1). The State argued in its brief that the state district court had jurisdiction over the case because neither T.R. nor Petitioner were Indians at the time of the offense, and that the State of Oklahoma maintained concurrent jurisdiction over the case (Ex. 8 at 8-25). Petitioner argued in his counseled brief that T.R. was an Indian even though he was not a registered member of the Cherokee Nation until roughly a week after the charges were filed (Ex. 9 at 10-13). In support, Petitioner claimed that ignoring subsequent enrollments would "encroach upon tribal

[4] *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020).

sovereignty," and the fact that T.R. was eligible for membership at the time of the crimes was "critical," particularly because he was a child (Ex. 9 at 12). Regarding his own Indian status, Petitioner acknowledged that he was not an enrolled member of any federally recognized tribe, but that he was continuing efforts to "trace his ancestry and to obtain documentation of his lineage" (Ex. 9 at 13). Further, Petitioner argued that his crime occurred in Indian Country (Ex. 9 at 13-16).

7. On June 22, 2021, the OCCA issued another order remanding the case for an evidentiary hearing, this time on T.R.'s Indian status (Exhibit 10, 6/22/21 Order Remanding for Evidentiary Hearing on Indian Status of Child Victim, at 1). After discussing the state district court's findings after the previous evidentiary hearing, the OCCA explained it was remanding the case because "this Court cannot base its findings on supposition" (Ex. 10 at 4). In so doing, the OCCA ordered that the State district court was to consider "the totality of the circumstances in making the determination regarding whether [T.R.] was affiliated with or had sufficient connection with a federally recognized tribe at the time of the crime" (Ex. 10 at 4). Following this order, Mr. Chad Johnson ("Mr. Johnson") entered his appearance on behalf of Petitioner (Ex. 4 at 6).

8. Back on Remand, Petitioner and the State filed pre-hearing briefs addressing the issue of T.R.'s Indian status on August 5 and 11, 2021, respectively (Ex. 2, O.R. Supp. II 3-50). In Petitioner's brief, he argued that T.R. was "Indian enough to be protected under federal criminal law," and that the State's arguments to the contrary were "offensive" (Ex. 2, O.R. Supp. II 8) (capitalization and quotations omitted). Further, Petitioner argued that federal jurisdiction was "exclusive" (Ex. 2, O.R. Supp. II 19-24). The State argued in response that criminal jurisdiction in Indian Country "looks to political identity, not ethnicity," and that the State maintained concurrent jurisdiction (Ex. 2, O.R. Supp. II 34-37, 48-49). Respondent argued further that Petitioner could not prove T.R. was recognized as an Indian at the time of the offense (Ex. 2, O.R. II Supp. 37-47).

The evidentiary hearing was held on September 21, 2021 (Ex. 2, O.R. Supp. II 55). The state district court issued its Order on Evidentiary Hearing on Indian Status of Child Victim on October 27, 2021, concluding that Petitioner failed to meet his burden of showing T.R. was recognized as an Indian at the time of the offense, and thus he "fail[ed] to set forth *prima facie* evidence of T.R.'s Indian status at the time of the offense" (Ex. 2, O.R. Supp. II 125-133). Accordingly, the state district court concluded "T.R. was not an Indian at the time of the offenses" (Ex. 2 at O.R. Supp. II 133).

9. Back at the OCCA, the parties again filed supplemental briefs following the second remand (Exhibit 11, Supplemental Brief of Petitioner, at 1; Exhibit 12, Appellee's Supplemental Brief Following Second Remand, at 1). While the case was pending, the United States Supreme Court decided *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022), which held the State of Oklahoma has concurrent jurisdiction over crimes committed by non-Indians against Indians in Indian Country. On October 13, 2022, the OCCA denied certiorari (Ex. 1 at 1). The Court concluded that Petitioner's jurisdictional claim failed under *Castro-Huerta* because he failed to show he was Indian, and thus "the State of Oklahoma and the federal government have concurrent jurisdiction to prosecute Petitioner for the crime of lewd molestation" (Ex. 1 at 4). Further, the OCCA also denied his claim in Proposition II that his plea was not entered knowingly, voluntarily, and intelligently, concluding, "[a] review of the plea hearing shows that a knowing and voluntary plea was entered" (Ex. 1 at 6). Accordingly, the OCCA concluded that the state district court did not abuse its discretion in denying Petitioner's motion to withdraw his plea (Ex. 1 at 7). The OCCA subsequently denied Petitioner's petition for rehearing on December 16, 2022 (Ex. 4 at 8).

10. Petitioner filed a counseled Application for Post-Conviction Relief on August 11, 2023 (Exhibit 13, Application for Post-Conviction Relief, Brief in Support and Request for an

Evidentiary Hearing, at 1). In the Brief in Support, Petitioner raised the following propositions:

> PROPOSITION I
>
> PETITIONER RECEIVED THE INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR INADEQUATELY RAISING PROPOSITIONS ON APPEAL BECAUSE PETITIONER'S PLEA IS NOT CONSTITUTIONALLY ADEQUATE BECAUSE THERE WAS NO FACTUAL BASIS TO ACCEPT PETITIONER'S PLEA.[5]
>
> . . .
>
> PROPOSITION II
>
> THE DISTRICT COURT FAILED TO DEVELOP A FACTUAL BASIS FOR ACCEPTING THE PLEA TO ENSURE PETITIONER'S PLEA WAS COMPREHENDED ON ALL ESSENTIAL ELEMENTS WHERE PETITIONER'S PLEA WAS NOT KNOWINGLY, VOLU[N]TARILY AND INTELLIGENTLY ENTERED.
>
> . . .
>
> PROPOSITION III
>
> III. THE DISTRICT COURT LACKED JURISDICTION BECAUSE OF A FEDERAL PREEMPTION.

(Ex. 13 at 13-30). The state district court denied the Application for Post-Conviction Relief on March 15, 2024 (Exhibit 14, Order Denying Application for Post-Conviction Relief, at 1). In denying relief on Propositions I and II, the state district court concluded that a factual basis was not required for a plea of no contest, and that Petitioner stipulated that the State could prove his guilt of both counts beyond a reasonable doubt (Ex. 14 at 6). And in rejecting Petitioner's claim that the state district court was without jurisdiction, the state district court concluded that such a claim failed in light of the Supreme Court's decision in *Castro-Huerta*.

[5] Though this claim was styled as a challenge to the lack of a factual basis, Petitioner's counseled Brief in Support spent the entirety of this proposition discussing—as he does in this Court—how there was insufficient evidence presented at preliminary hearing and why Mr. Faubert should have filed a motion to quash (Ex. 16 at 12-18).

11. Petitioner appealed the denial of post-conviction relief to the OCCA, filing his Petition in Error and Brief in Support of Post-Conviction Appeal on May 13, 2024 (Exhibit 15, Petition in Error PC-2024-386, at 1; Exhibit 16, Brief in Support of Post-Conviction Appeal, at 1). Petitioner raised the following propositions in the Brief in Support of Post-Conviction Appeal:

PROPOSITION I

> THE DISTRICT COURT ABUSED ITS DISCRETION [IN] DENYING THE PETITIONER'S APPLICATION FOR POST-CONVICTION RELIEF [BECAUSE] PETITIONER RECEIVED THE INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR INADEQUATELY RAISING PROPOSITIONS ON APPEAL BECAUSE PETITIONER'S PLEA IS NOT CONSTITUTIONALLY ADEQUATE BECAUSE THERE WAS NO FACTUAL BASIS TO ACCEPT PETITIONER'S PLEA.
>
> . . .

PROPOSITION II

> THE DISTRICT COURT ABUSED ITS DISCRETION [IN] DENYING THE PETITIONER'S APPLICATION FOR POST-CONVICTION RELIEF BECAUSE THE DISTRICT COURT FAILED TO DEVELOP A FACTUAL BASIS FOR ACCEPTING THE PLEA TO ENSURE PETITIONER'S PLEA WAS COMPREHENDED ON ALL ESSENTIAL ELEMENTS WHERE PETITIONER'S PLEA WAS NOT KNOWINGLY, VOLU[N]TARILY AND INTELLIGENTLY ENTERED.
>
> . . .

PROPOSITION III

> THE DISTRICT COURT ABUSED ITS DISCRETION [IN] DENYING THE PETITIONER'S APPLICATION FOR POST-CONVICTION RELIEF FAILING TO ADDRESS THE ISSUE OF FEDERAL PREEMPTION AND NO ANALYSIS WHICH IGNORES THE FEDERAL CLAIM IS SUFFICIENT TO BE A DETERMINATION ON THE MERIT[S].

(Ex. 16 at 12, 18, 30) (capitalization in original). On June 14, 2024, the OCCA affirmed the state district court's denial of post-conviction relief (Exhibit 17, Order Affirming Denial of Application for Post-Conviction Relief, at 1). In so holding, the OCCA first concluded that Propositions II and

III were barred from review by *res judicata* because they were raised and addressed on the merits in his certiorari appeal (Ex. 17 at 4). Finally, in denying the portion of Proposition I that again discussed the sufficiency of the evidence at preliminary hearing and Mr. Faubert's failure to file a motion to quash, the OCCA noted that Mr. Faubert filed a demurrer to both counts, and also that where a defendant pleads without filing a motion to quash, "irregularities in the preliminary hearing process are waived for appellate review" (Ex. 17 at 6). Accordingly, the OCCA concluded Petitioner failed to show Ms. Walterscheid's conduct was objectively unreasonable or any resulting prejudice (Ex. 17 at 6).

12. Petitioner's grounds for relief appear to be exhausted, but Respondent does *not* waive exhaustion. *See* 28 U.S.C. § 2254(b)(3).

13. It appears that the petition is timely filed.

14. The following transcripts are available: Preliminary Hearing Volume I held on August 31, 2018; Preliminary Hearing Volume II held on December 21, 2018; Transcript of Jury Trial held on October 21-22, 2019; Motion to Withdraw Plea Hearing Volume I, held on November 19, 2019; Motion to Withdraw Plea Hearing Volume II, held on November 26, 2019; Transcript of the first evidentiary hearing on remand, held on January 4, 2021; and the Transcript of the second evidentiary hearing on T.R.'s Indian status held on September 21, 2021.[6] Complete copies of these transcripts—as well as the trial exhibits and original record—are being filed along with this response. Relevant portions of the transcripts are attached to this Response as Exhibit "18." Relevant portions of the original record are attached to this Response as Exhibit "2."

15. Respondent is not aware of any proceedings that have been recorded but not

[6] Respondent will refer to the preliminary hearing transcripts as (Ex. 18, PH [Vol. #] __), to the trial transcript as (Ex. 18, Tr. __), to the two motion to withdraw plea transcripts as (Ex. 18, WH [Vol. #]__), and to the two evidentiary hearing transcripts as (Ex. 18, EH [Vol. #] __).

transcribed.

16. Petitioner is not entitled to an evidentiary hearing. This Court's review of Petitioner's habeas petition is limited to the record that was before the OCCA when it adjudicated his claims on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). As will be shown, Petitioner fails to show that the OCCA's adjudication of his claims resulted in unreasonable determinations of law or fact under 28 U.S.C. § 2254(d). Furthermore, Petitioner has not been diligent and cannot satisfy the strict standards of 28 U.S.C. § 2254(e)(2). *See Cannon v. Trammell*, 796 F.3d 1256, 1264 (10th Cir. 2015). In particular, as to Petitioner's lack of diligence, "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court **in the manner prescribed by state law**." *Williams v. Taylor*, 529 U.S. 420, 437 (2000) (emphasis added). Merely requesting an evidentiary hearing is not always sufficient. *Fairchild v. Workman*, 579 F.3d 1134, 1145 (10th Cir. 2009). Rather, diligence depends on the efforts made by the petitioner "to develop facts in compliance with state law." *Boyle v. McKune*, 544 F.3d 1132, 1136 (10th Cir. 2008). More specifically, the question is whether, under an objective standard, the petitioner "'could reasonably have believed' his request for an evidentiary hearing met the then-existing [state] law requirements." *Id*. Here, Petitioner does not meet this standard and was not diligent.

## STATEMENT OF THE FACTS

In 2017, T.R. was five years old (Ex. 18, Tr. 165, 177).[7] He lived with his younger brother, K.R. ("K.R."), and his mother, Ms. Doughty (Ex. 18, Tr. 161-62). They lived in a duplex on Scraper St. in Vinita, Oklahoma (Ex. 18, Tr. 178). Ms. Doughty's sister, Patricia Guyer ("Ms.

[7] The State called two witnesses to testify at trial—T.R. and Ms. Doughty—before Petitioner entered his no contest plea (Ex. 18, Tr. 159, 177).

Guyer") lived in the unit next door with her family (Ex. 18, Tr. 178). Ms. Doughty knew Petitioner because they went to school together (Ex. 18, Tr. 177-78). Petitioner was initially "hanging around" Ms. Guyer's unit, but then he started coming over to Ms. Doughty's unit to play video games with T.R. and K.R. (Ex. 18, Tr. 178). Petitioner started watching T.R. and K.R. while Ms. Doughty would clean, run errands, or go shopping (Ex. 18, Tr. 178). T.R. and K.R. referred to Petitioner as "Uncle Ben" (Ex. 18, Tr. 177-78). Sometimes Ms. Doughty would call Petitioner to come watch the children, but other times he just showed up to the unit (Ex. 18, Tr. 180). There were multiple occasions where Petitioner was left alone with T.R. and K.R. (Ex. 18, Tr. 179).

At around 7 p.m. on June 30, 2017, Ms. Doughty was at the local hospital with stomach pains (Ex. 18, Tr. 180). T.R. and K.R. were at home with their cousin K.G. ("K.G.")[8] babysitting them (Ex. 18, Tr. 180). Around that time K.G. put K.R. and T.R. into a bath together (Ex. 18, Tr. 181). K.G. briefly left the bathroom, but when she returned she observed K.R. with his mouth on T.R.'s penis (Ex. 18, Tr. 181). K.G. immediately contacted Ms. Doughty and told her what happened (Ex. 18, Tr. 181). Ms. Doughty called her mother, Terry Harris ("Ms. Harris"), and asked her to go to the duplex to speak with T.R. (Ex. 18, Tr. 181). Ms. Harris arrived soon after and asked T.R. where he learned that (Ex. 18, PH I 33-34). T.R. informed her that Petitioner had touched his "pee pee," and then took her to his room to demonstrate for her (Ex. 18, PH I 35-36). In the bedroom, T.R. demonstrated for Ms. Harris by laying on the bed, reaching into his pants, and rubbing his penis (Ex. 18, PH I 35-36). Ms. Harris asked T.R. to stop, but he continued (Ex. 18, PH I 36). She subsequently called Ms. Doughty and told her that she needed to come home immediately because T.R. disclosed "something" (Ex. 18, Tr. 183-83).

[8] The record does not explain what age K.G. was at the time, so out of an abundance of caution Respondent refers to her by her initials.

When Ms. Doughty arrived home, T.R. and K.R. were waiting for her with Ms. Harris (Ex. 18, Tr. 183). They appeared scared and nervous (Ex. 18, Tr. 183). Ms. Doughty asked Ms. Harris what happened, and Ms. Harris told her that she needed to speak with T.R. (Ex. 18, Tr. 184). T.R. then informed Ms. Doughty that Petitioner touched his penis, and then laid on his bed and demonstrated how for her (Ex. 18, Tr. 184). T.R. was afraid that he was going to get in trouble, and Ms. Doughty started crying (Ex. 18, Tr. 185). She then called 911 and reported the abuse (Ex. 18, Tr. 186).

Detective Jared Langley ("Det. Langley") of the Vinita Police Department was informed of these allegations by a patrol sergeant (Ex. 18, PH I 64). Shortly after the allegations were reported, Det. Langley interviewed Petitioner (Ex. 18, PH I 64). In that interview Petitioner stated if the touching happened it was accidental, before ultimately providing a list of when it could possibly have happened (Ex. 18, PH I 67). Petitioner acknowledged that T.R. and K.R. were "good, honest kids," and that T.R. had "nothing to gain" through making the allegations (Ex. 18, PH I 68-69). At one point, Det. Langley asked Petitioner if he was ever left alone with T.R. and K.R. (Ex. 18, PH I 68). Though he initially stated he was left alone with them two times, Petitioner later changed that answer to never (Ex. 18, PH I 68). Petitioner stated he was very close to T.R. and K.R., and that they called him "Uncle Ben" (Ex. 18, PH I 68). Det. Langley asked Petitioner if he had any pictures of the children on his cell phone, and Petitioner started showing him selfies he had taken with T.R. and K.R. (Ex. 18, PH I 69). Det. Langley believed there might be evidence on the cellphone, so he confiscated it, put it in airplane mode to avoid remote deletion of any data, and turned the phone off (Ex. 18, PH I 69-70).

In August 2017, Det. Langley gave the phone to Deputy Chief Steve Cox ("Dpty. Chief Cox") of the Claremore Police Department so he could perform a data extraction (Ex. 18, PH I 8-

10, 71). Dpty. Chief Cox performed a forensic download of the phone and was able to extract 16.3 gigabytes of data (Ex. 18, PH I 10). He provided Det. Langley with a PDF report of what was on the cellphone, as well as the actual data extracted (Ex. 18, PH I 10). There were multiple "alarming" and "concerning" photographs of the genitals of children under eighteen years old recovered from Petitioner's phone (Ex. 18, PH I 72). Det. Langley then showed the photographs to Dr. Steven Egleston ("Dr. Egleston"), a Family Practitioner in the area, on August 16, 2017 (Ex. 18, PH I 55). Dr. Egleston routinely looked at cases for the Child Advocacy Center in Claremore, Oklahoma, which included looking at photographs of children to determine whether they were under eighteen years old (Ex. 18, PH I 56-57). Based on his experience as a physician, Dr. Egleston determined that the individuals depicted in the photographs were under eighteen (Ex. 18, PH I 58).

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas relief with respect to a claim adjudicated on the merits by a state court only if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The threshold question for this Court on habeas review is whether Petitioner seeks to apply a rule of law that was "clearly established" by the Supreme Court at the time of the state court's decision. *See House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008). "[C]learly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*." *Id.* at 1016. Where there is no clearly established federal law, that ends this

Court's inquiry under § 2254(d)(1). *See id.* at 1018.

If a clearly established rule of federal law is implicated, however, then this Court must decide whether the state court's decision was contrary to, or an unreasonable application of, that clearly established rule of federal law. *See id.* A state court decision is contrary to clearly established federal law as determined by the Supreme Court when it applies a rule that contradicts the governing law set forth in the Supreme Court's cases or decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Mitchell v. Gibson*, 262 F.3d 1036, 1045 (10th Cir. 2001).

A state court decision involves an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States when the state court correctly identifies the governing legal principle but applies it to the facts of the particular case in an unreasonable manner. *Valdez v. Bravo*, 373 F.3d 1093, 1096 (10th Cir. 2004); *Gilbert v. Mullin*, 302 F.3d 1166, 1171 (10th Cir. 2002). The Supreme Court has explained as follows regarding the "unreasonable application" clause:

> In § 2254(d)(1), Congress specifically used the word "unreasonable," and not a term like "erroneous" or "incorrect." Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be **unreasonable**.

*Williams*, 529 U.S. at 411 (emphasis added).

The Supreme Court has further held that "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). As the Tenth Circuit has explained,

the fairminded jurist test is a way of measuring reasonableness:

> The Court's "fairminded jurists" test . . . serves as a proxy for "unreasonable application." It is designed to help federal courts reviewing § 2254 habeas motions to determine whether a state court decision that would be incorrect under de novo review is also unreasonable. Under the test, if all fairminded jurists would agree the state court decision was incorrect, then it was unreasonable and the habeas corpus writ should be granted. If, however, some fairminded jurists could possibly agree with the state court decision, then it was not unreasonable and the writ should be denied.

*Frost v. Pryor*, 749 F.3d 1212, 1225 (10th Cir. 2014). *Frost* further stated that federal courts

> may issue the writ only when the petitioner shows there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents. Thus, even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable. If this standard is difficult to meet—and it is—that is because it was meant to be. Indeed, AEDPA stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Accordingly, we will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy.

*Id.* at 1223 (quotation marks and citations omitted, alterations adopted, emphasis in original). This "fairminded jurists" standard applies to the determination of whether there exists clearly established federal law, as well as to the contrary to and unreasonable application clauses of § 2254(d)(1) and to § 2254(d)(2). *See Dunn v. Madison*, 583 U.S. 10, 12 (2017) (*per curiam*); *Brumfield v. Cain*, 576 U.S. 305, 313-14 (2015); *White v. Woodall*, 572 U.S. 415, 427 (2014).

Additionally, state court determinations of fact "shall be presumed correct" unless Petitioner rebuts the presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Thus, a state court's decision cannot be said to be based on an unreasonable determination of the facts until a petitioner has shown by clear and convincing evidence that the state court's factual determination was incorrect. *Black v. Workman*, 682 F.3d 880, 896-97 (10th Cir. 2012) (refusing to grant relief under § 2254(d)(2) because the petitioner had failed to present clear and convincing evidence to rebut a state court's factual finding); *but see Wood v. Allen*, 558 U.S. 290, 300-01

(2010) (declining to decide the relationship between § 2254(d)(2) and § 2254(e)(1)); *(John) Grant v. Trammell*, 727 F.3d 1006, 1024 n.6 (10th Cir. 2013) (same).

## ARGUMENT AND AUTHORITY

## GROUND I

**PETITIONER'S CLAIM OF INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FAILS BECAUSE THE OCCA'S REJECTION OF SAME WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED LAW, NOR BASED ON AN UNREASONABLE FACTUAL DETERMINATION.**

In Ground I, Petitioner claims that he received "the ineffective assistance of appellate counsel because Petitioner's plea is not constitutionally adequate because there was no factual basis to accept petitioner's plea" (Doc. 2 at 9).[9] This Court should deny relief because the OCCA's decision was not contrary to or an unreasonable application of clearly established law or based on unreasonable factual determination.

### A. Background

Petitioner first raised this claim on post-conviction as Proposition I in his Application for Post-Conviction Relief (Ex. 13 at 13-18). After the state district court denied post-conviction relief (Ex. 14 at 1-7), he then raised this claim as Proposition I in his Brief in Support of Post-Conviction Appeal, stating as follows:

PROPOSITION I

THE DISTRICT COURT ABUSED ITS DISCRETION [IN] DENYING THE PETITIONER'S APPLICATION FOR POST-CONVICTION RELIEF [BECAUSE] PETITIONER RECEIVED THE INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR INADEQUATELY RAISING PROPOSITIONS

[9] Because Ms. Walterscheid filed the Brief of Petitioner on certiorari appeal to the OCCA, and Mr. Johnson only entered for purposes of litigating the second evidentiary hearing regarding T.R.'s Indian status, Petitioner could only be referring to Ms. Walterscheid as being ineffective (Ex. 5 at 1). Accordingly, Respondent will analyze this claim as only applying to Ms. Walterscheid.

> ON APPEAL BECAUSE PETITIONER'S PLEA IS NOT CONSTITUTIONALLY ADEQUATE BECAUSE THERE WAS NO FACTUAL BASIS TO ACCEPT PETITIONER'S PLEA.

(Ex. 16 at 12) (emphasis and capitalization in original). In support of this claim, he argued that his plea to Count I was "undermined by the lack of probable cause established at the Preliminary Hearing to bind him over when [T.R.] was unavailable," and that "Oklahoma law allow[ed] a defendant to file a Motion to Quash for Insufficient Evidence" (Ex. 16 at 13). Further, Petitioner argued that T.R. was "an unavailable witness for the Preliminary Hearing despite his physical appearance and limited testimony which required physical corroboration" (Ex. 16 at 15). To support his argument that T.R. was unavailable, Petitioner asserted that "the bindover in Count I was not based upon sufficient evidence and thus there must be a factual basis developed to ensure Petitioner's plea [was] knowing[,] intelligent and voluntary" (Ex. 16 at 16). Furthermore, Petitioner also argued that his plea to Count II—Possession of Juvenile Pornography—lacked a factual basis because there was "no probable cause to support binding Petitioner over for [t]rial," and thus his plea was void because "no crime had been committed" (Ex. 16 at 16). In support of that claim, Petitioner argued that the images that law enforcement determined were child pornography "are not supported by the State's witnesses and [Mr. Faubert] should have filed a Motion to Quash Count 2" (Ex. 16 at 16-17).

In affirming the district court's denial of relief, the OCCA wrote as follows:

> All issues that were previously raised and ruled upon in direct appeal proceedings or previous post-conviction proceedings are barred as *res judicata*, and all issues that could have been raised in those previous proceedings but were not, are waived, and may not be the basis of a subsequent post-conviction application. 22 O.S.Supp.2022, § 1086; *Davis v. State*, 2005 OK CR 21, ¶ 2, 123 P.3d 243, 244.
>
> . . .

Petitioner's [first] proposition claims [Ms. Walterscheid] was ineffective for failing to raise in the Petition for Writ of Certiorari that trial counsel was ineffective for not filing a motion to quash the preliminary hearing bindover.

Claims of ineffective assistance of appellate counsel may be raised for the first time on post-conviction as it is usually a petitioner's first opportunity to allege and argue the issue. As set forth in *Logan v. State*, 2013 OK CR 2, ¶ 5, 293 P.3d 969, 973, post-conviction claims of ineffective assistance of appellate counsel are reviewed under the standard for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Smith v. Robbins*, 528 U.S. 259, 289 (2000) ("[Petitioner] must satisfy both prongs of the *Strickland* test to prevail on his claim of ineffective assistance of appellate counsel."). Under *Strickland,* a petitioner must show both (1) deficient performance, by demonstrating that his counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687-89. We recognize that "[a] court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.' *Harrington v. Richter,* 562 U.S. 86, 104 (2011) (quoting *Strickland,*466 U.S. at 689).

We set forth in *Logan* that in reviewing a claim of ineffective assistance of appellate counsel under *Strickland*, a court must look to the merits of the issues that appellate counsel failed to raise. *Logan*, 2013 OK CR 2, ¶¶ 5-7, 293 P.3d at 973-74. Only an examination of the merits of any omitted issues will reveal whether appellate counsel's performance was deficient and also whether the failure to raise the omitted issues on appeal prejudiced the defendant; i.e., whether there is a reasonable probability that raising the omitted issue would have resulted in a different outcome in the defendant's direct appeal. *Id.*

The District Court determined that at the close of the preliminary hearing trial counsel entered a demur to the State's evidence, which was taken under advisement by the Judge. After a review of briefs filed by the parties, the Judge overruled Petitioner's request for a demurrer and bound him over for trial on both counts. Trial counsel then filed a demurrer to the information which was overruled by the trial court after review of briefs and a hearing. Trial counsel then filed a motion to suppress which was denied by the trial court. After a jury was seated and two witnesses testified Petitioner then elected to enter a no contest plea to both counts. **Where there is no motion to quash filed after the preliminary hearing and the Petitioner enters a plea, any irregularities in the preliminary hearing process are waived for appellate review. *Gordon v. State,* 2019 OK CR 24, ¶ 14, 451 P.3d 573, 580.** Based on this **Petitioner has failed to show that appellate counsel's conduct was objectively unreasonable or any resulting prejudice.**

(Ex. 17 at 3-7) (emphasis added). Accordingly, the OCCA concluded Petitioner "failed to demonstrate an abuse of discretion by the District Court," and "[t]herefore, the order of the District Court denying Petitioner's application for post-conviction relief is **AFFIRMED**" (Ex. 17 at 6-7) (emphasis and capitalization in original).

**B. Petitioner fails to satisfy § 2254(d).**

Petitioner's claim that Ms. Walterscheid was ineffective for failure to challenge the lack of a factual basis of his plea is entirely meritless. To begin, Petitioner's counseled habeas does not acknowledge the OCCA's basis for denying relief, let alone show or in any way support that it was contrary to clearly established Supreme Court law, or that it was legally or factually unreasonable. Accordingly, Petitioner has forfeited any relevant argument that he can satisfy § 2254(d). *See Hancock v. Trammell*, 798 F.3d 1002, 1011 (10th Cir. 2015). In any event, assuming *arguendo* that this claim was adequately raised, relief should be denied.[10]

To prevail on claims of ineffective assistance of counsel, a petitioner must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. To meet his burden on the first prong, a petitioner must show that "counsel made errors so serious that [he] was **not functioning as the counsel** guaranteed the [petitioner] by the Sixth Amendment[.]" *Strickland*, 466 U.S. at 687; *See Smith v. Archuleta*, 658 F. App'x 422, 437 (10th Cir. 2016) (unpublished) ("In any ineffectiveness case, a particular decision must be directly assessed for reasonableness in all circumstances, applying a **heavy**

[10] To the extent the OCCA's denial of relief does not expressly address ineffective assistance of appellate counsel as premised on challenges to preliminary hearing, or on the lack of a factual basis for his plea, this Court must presume this claim was adjudicated on the merits. *See Johnson v. Williams*, 568 U.S. 289, 298-301 (2013) (holding that "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits.").

**measure of deference** to counsel's judgments. Mere disagreement as to trial strategy will not support a claim of ineffectiveness") (internal quotations omitted) (citing *Strickland*, 466 U.S. at 691). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and in making this determination a court must "judge a counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90; *see Kastner v. Wilkerson*, No. 13-CV-0138-CVE-FHM, 2015 WL 6132985, at *7 (N.D. Okla. Oct. 16, 2015) (unpublished) ("It is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable").

The same standard governing ineffective assistance of trial counsel claims applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Therefore, Petitioner must show that appellate counsel's performance was unreasonable—that he was not functioning as the counsel guaranteed by the Sixth Amendment—and that he suffered prejudice, that is, that there is a reasonable probability that, had the errors now complained of been raised, the result of his appeal would have been different. *Id.*; *Richter*, 562 U.S. at 112 (the reasonable probability of a different outcome must be "substantial, not just conceivable"). Where appellate counsel files a brief on the merits, he should not raise every nonfrivolous claim. *Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004). Rather, appellate counsel may select from among claims to maximize the likelihood of success. *Id*. Therefore, it is difficult to establish that appellate counsel was ineffective for failing to raise a particular issue. *Id.*; *Smith*, 658 F. App'x at 437 ("In any ineffectiveness case, a particular decision must be directly assessed for reasonableness in all circumstances, applying a **heavy measure of deference** to counsel's judgments. Mere

disagreement as to trial strategy will not support a claim of ineffectiveness") (internal quotations omitted) (citing *Strickland*, 466 U.S. at 691).

To determine whether appellate counsel's decision not to raise a particular issue constituted deficient performance, it is necessary to evaluate the merits of the omitted claim. *Miller*, 354 F.3d at 1298. If the issue was so plainly meritorious that it would have been unreasonable to exclude it, even if the appeal was otherwise strong, then counsel's performance may have been unreasonable. *Id*. If the issue has some merit but is not so compelling that its exclusion would have been unreasonable, then its merit should be weighed against the rest of the appeal, considering the deference that a court must give to any professional judgment on the part of counsel. *Id*. Finally, if the issue is meritless, counsel was not deficient for failing to raise it. *Id*. An appellate attorney must select out those claims he believes, in light of his professional judgment, have the best chances of success. *See Jones v. Barnes*, 463 U.S. 745, 751-53 (1983). Although the Supreme Court has suggested that "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim," it has also acknowledged that "it is difficult to demonstrate that counsel was incompetent" in selecting the issues she did raise. *Robbins*, 528 U.S. at 288. Only when ignored claims are clearly stronger than those raised will a petitioner be able to prevail. *Id.*

To begin, Respondent finds it necessary to discuss what Petitioner does not claim in this Ground. Though he challenges the sufficiency of the evidence at preliminary hearing, he does not claim that Ms. Walterscheid was ineffective for failing to challenge the sufficiency of the evidence at preliminary hearing (Doc. 2 at 9-17). Further, his counseled petition cannot be liberally construed to raise such an argument. *See Celli*, 40 F.3d at 327. Moreover, any such argument ignores that challenges to preliminary hearing are not cognizable on federal habeas, as this Court has previously concluded. *Armstrong v. Franklin*, No. 06-CV-489-TCK-TLW, 2010 WL 654302,

at *8 (N.D. Okla. Feb. 19, 2010) (unpublished). Indeed, in *Armstrong* the petitioner argued that since the State failed to establish the chain of custody for the crack cocaine at the preliminary hearing, there was insufficient evidence to bind him over on his Trafficking Crack Cocaine charge, and thus the state district court erred in failing to grant his motion to quash. *Id.* This Court rejected that claim, holding it was "not redressable by way of a habeas petition." *Id.* In so holding, the Court explained, "[a] 28 U.S.C. § 2254 petition challenges the validity of a state prisoner's conviction and sentence, . . . and the Supreme Court has long held that an illegal arrest or detention does not void a subsequent conviction." *Id.* (internal citations and quotations omitted) (quoting Gerstein v. Pugh, 420 U.S. 103, 119 (1975)). Accordingly, the Court concluded that because the petitioner was ultimately convicted of Trafficking in Crack Cocaine, "his challenge to the sufficiency of the evidence at his preliminary hearing **cannot be grounds for habeas relief**." *Id.* (emphasis added) (citing *Powers v. Dinwiddie*, No. 08-6213, 324 F. App'x 702, 704-05 (10th Cir. Apr. 1, 2009) (unpublished)); *see also Montoya v. Scott*, 65 F.3d 405, 422 (5th Cir. 1995). Similarly here, even affording Petitioner the liberal construction to which he is not entitled, any claim challenging the sufficiency of the evidence at preliminary hearing is not grounds for habeas relief. Likewise, to the extent that Petitioner asserts that appellate counsel should have challenged the sufficiency of the evidence at preliminary hearing, the OCCA reasonably concluded that appellate counsel was not ineffective for declining to raise a claim that was waived. *See Miller*, 354 F.3d at 1298. In any event, to the extent Petitioner claims the preliminary hearing testimony is relevant to the factual basis for his plea, there was a sufficient factual basis for Petitioner's plea for the reasons discussed below.

Additionally, to the extent Petitioner claims Ms. Walterscheid was ineffective for inadequately raising a claim that there was an insufficient factual basis for his plea under state law,

this argument ignores that he has no constitutional right to a factual basis for his plea, as this Court has also concluded previously when addressing a similar claim. *Ruble v. Workman*, No. 03-CV-368-TCK-FHM, 2006 WL 3693371, at *4 (N.D. Okla. Dec. 13, 2006) (unpublished). Regardless, this claim also ignores that there was a sufficient factual basis for Petitioner's plea, and thus Ms. Walterscheid was not ineffective for failing to raise a claim to the contrary. *Miller*, 354 F.3d at 1298 (holding appellate counsel is not ineffective for failing to raise a meritless claim on appeal). In *Ruble*, the petitioner pleaded no contest to Second Degree Burglary, After Former Conviction of a Felony in the District Court of Ottawa County, Oklahoma. *Id.* at *1. He subsequently filed a timely motion to withdraw this plea and then appealed the state district court's denial of that motion via a certiorari appeal to the OCCA. *Id.* The petitioner claimed on certiorari appeal, *inter alia*, that there was an insufficient factual basis for his plea. *Id.* at *2. The OCCA ultimately concluded the State's offer of proof at the plea hearing provided a sufficient factual basis, denying relief. *Id.* at *2. The petitioner raised this claim on habeas, and this Court succinctly rejected it. *Id.* at *4. In so holding, the Court explained, "the record demonstrates that the State's offer of proof included sufficient facts to support the trial court's acceptance of [the petitioner's] *nolo contendere* plea." *Id.* Accordingly, the Court concluded Petitioner was not entitled to habeas relief. *Id.*

Similarly, Petitioner's claim fails because there was a factual basis for his plea. Indeed, Petitioner's argument ignores that two witnesses were called at trial before he entered his plea (Ex. 18, Tr. 159, 177). Indeed, T.R. testified at trial that Petitioner touched his "pee pee" and that he was around five years old at the time (Ex. 18, Tr. 163-64). Further, T.R. stated that this occurred in his bedroom while he was sleeping, and that the touching was under his clothes, skin to skin (Ex. 18, Tr. 165-67). Moreover, Ms. Doughty testified that when she came home on June 30, 2017, T.R. told her that Petitioner touched his penis and then took her in his room to demonstrate how

(Ex. 18, Tr. 181-84). And to the extent Petitioner claims the evidence at preliminary hearing is also relevant to whether there was a factual basis, this testimony from trial was all in accord with Ms. Doughty's testimony at the preliminary hearing, as well as Ms. Harris's testimony at the preliminary hearing that T.R. told her Petitioner touched his penis, before demonstrating how (Ex. 18, PH I 21-24, 33-36). Furthermore, Dr. Egelston testified at the preliminary hearing that—based on his training and experience—the juvenile pornography recovered from Petitioner's phone was indeed photographs of children under eighteen (PH I56-58).

Petitioner's claim also fails because he ignores that during his plea the state district court and the parties actually discussed a factual basis for the plea (Ex. 18, Tr. 213). Specifically, the state district court asked if there was a factual basis for the plea, and the following discussion was had:

> The court: Counsel, **is there a factual basis for the no contest plea**?
>
> Mr. Faubert: **Yes, Your Honor.**
>
> The court: Okay. Is there a stipulation?
>
> Mr. Faubert: **Just the testimony,** Your Honor.
>
> The court: Okay. Does the State wish to stand on the stipulation?
>
> Ms. Strain: Yes, sir. I believe with the no contest plea, [Petitioner] is stipulating that **if . . . additional evidence were presented to the jury or a judge as the trier of fact, the trier of fact could find him guilty of the crimes charged**, both Lewd Molestation and Possession of Juvenile Pornography.
>
> The court: Okay. And you heard what the State put on the record. Is that what you're stipulating to, sir?
>
> . . .
>
> [Petitioner]: **Yes.**
>
> The court: And are you . . . in fact stipulating that the State could prove **beyond a reasonable doubt** that you, in fact, **violated both Count 1, Lewd Molestation,**

> **and Count 2, Possession of Juvenile Pornography**?
>
> [Petitioner]: **Yeah,** she's an excellent artist, Your Honor.
>
> The court: Huh?
>
> . . .
>
> [Petitioner]: **Yes, sir**[.]
>
> The court: So you are saying and **you are stipulating that the State could prove** beyond a reasonable doubt that you did, in fact, commit **both** of those offenses?
>
> [Petitioner]: **Yes, Your Honor.**

(Ex. 18, Tr. 213-14) (emphasis added). Then the state district court ensured that Petitioner understood the minimum sentences he faced on both counts before accepting Petitioner's plea (Ex. 18, Tr. 215-16). Thus, even assuming *arguendo* that a factual basis was required, there was a factual basis for Petitioner's plea (Ex. 18, Tr. 212-16). Accordingly, any claim to the contrary by Ms. Walterscheid would have been meritless and Petitioner has failed to satisfy § 2254(d). *Miller*, 354 F.3d at 1298.

**C. Conclusion**

Based on all of the above, habeas relief is unwarranted on Ground I. 28 U.S.C. § 2254(d). Indeed, the record indicates there was a factual basis for Petitioner's plea. *Strickland*, 466 U.S. at 687, 694; *Miller*, 354 F.3d at 1298.

## GROUND II

**PETITIONER'S CLAIM THAT HIS PLEA WAS NOT KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY ENTERED BECAUSE OF THE LACK OF A FACTUAL BASIS IS BARRED. REGARDLESS, PETITIONER FAILS TO SHOW THE DENIAL OF THIS CLAIM ON CERTIORARI APPEAL WAS CONTRARY TO OR AN UNREASONABLE APPLICATION OF THE CLEARLY ESTABLISHED LAW OR BASED ON AN UNREASONABLE DETERMINATION OF FACT.**

In Ground II, Petitioner claims his plea "was not knowingly, voluntarily and intelligently entered and the OCCA determination is objectively unreasonable because of clearly established law" (Doc. 2 at 17). In support, he argues that "[a] plea cannot be considered 'knowing' when the record establishes no factual basis for the elements of the charged offense" (Doc. 2 at 17-18). Further, he argues that "[f]fundamental due process requires that a plea of guilty be shown, on the record, to have been entered knowingly, intelligently, and voluntarily" (Doc. 2 at 18). But this argument fails because it is procedurally barred. Regardless, Petitioner fails to satisfy § 2254(d) for the same reasons Respondent discussed in Ground I—he had no constitutional right to a factual basis and, regardless, there was a sufficient factual basis.

**A. Background**

During a recess after T.R. and Ms. Doughty's testimonies at trial, Mr. Faubert announced Petitioner wished to enter a blind plea of no contest to the charges (Ex. 18, Tr. 208). The state district court then placed Petitioner under oath, and had the following exchange:

> The court: Your attorney has handed me this Plea of . . . No Contest Form. Did you go over this form with the help of your attorney?
>
> [Petitioner]: Yes, sir.
>
> . . .
>
> The court: On Page 6 of this Plea of No Contest Form, is this your signature?
>
> [Petitioner]: Yes, sir.
>
> The court: Can you read and write and understand the English language?
>
> [Petitioner]: Yes, sir.
>
> The court: **Did you understand all the questions that were asked on this form?**
>
> [Petitioner]: **Yes, sir.**

> The court: **Did you answer them true and correct to the best of your knowledge and belief?**
>
> [Petitioner]: **Yes, sir.**
>
> The court: Are you under the influence of any drugs, alcohol or medications today that could affect your decisions here today?
>
> [Petitioner]: No, sir.
>
> . . .
>
> The court: **Have you been threatened, forced or promised anything to enter a plea today?**
>
> [Petitioner]: **No,** Your Honor.

(Ex. 18, Tr. 207-209) (emphasis added). The state district court then confirmed with Mr. Faubert that he believed Petitioner was competent (Ex. 18, Tr. 209). Further, the court confirmed with Petitioner that he understood what rights he was specifically waiving by pleading no contest (Ex. 18, Tr. 209-10). Petitioner also confirmed to the court that he had not been forced to enter the plea and that he was pleading no contest of his own accord (Ex. 18, Tr. 212-13). The plea paperwork, signed by Petitioner also confirmed that he had not been forced by anyone to enter his plea and that he was entering the plea "of [his] own free will and **without any coercion or compulsion** of any kind" (Ex. 2, O.R. II 245) (emphasis added).

Petitioner timely filed a motion to withdraw his plea on October 29, 2019 (Ex. 2, O.R. II 257). In the motion to withdraw, he claimed his plea was made "without deliberation, was heavily rushed, and overly influenced by his attorney, and his mother and father" (Ex. 2, O.R. II 257). Further, Mr. Faubert stated that he became aware after the plea that Petitioner had been diagnosed with "severe bipolar disorder," as well as other mental health issues (Ex. 2, O.R. II at 257-58). At the November 26, 2019, hearing on his motion to withdraw his plea, Petitioner averred that during the recess at trial he went to the bathroom, and when he returned he was called into a small room

with Mr. Faubert, his parents, and his mentor. (Ex. 18, WH II 5). He claimed they said it was "not looking good for him," and suggested that he enter a plea (Ex. 18, WH II 5). Petitioner also claimed he lied on the plea paperwork and that he was untruthful about his mental health issues (Ex. 18, WH II 6). While he claimed he had been bipolar since he was eleven years old, he admitted he did not take medication (Ex. 18, WH II 6). Further, he claimed the conversation about his plea was "rushed," and he did not have sufficient time to consider whether to enter the plea (Ex. 18, WH II 8-9). On cross-examination by the State, Petitioner claimed he did not remember informing the state district court that no one had forced him to enter a plea, or that he understood the consequences of the proceeding (Ex. 18, WH II 14-15). He also admitted that he understood the court's questions regarding his plea but claimed that he was "overwhelmed" (Ex. 18, WH II 19-21). Petitioner then admitted that his testimony was that he lied to everyone at the plea hearing (Ex. 18, WH II 19-21). He could not answer the State's question why anyone should believe his claim that he had been too overwhelmed to properly enter a plea (Ex. 18, WH II 21).

Mr. Faubert then testified at the withdrawal hearing on behalf of Petitioner, stating that if he had been made aware of Petitioner's mental health prior to the plea he would have requested an inquiry into his mental competency (Ex. 18, WH II 28). Further, Mr. Faubert claimed that the plea conversation during the recess was "pretty quick," and "hectic" (Ex. 18, WH II 29-31). Mr. Faubert also averred that, at the time of the conversation, he believed Petitioner was "emotional" and perhaps "going through a panic attack" (Ex. 18, WH II 31). Nevertheless, on cross-examination by the State, Mr. Faubert admitted that Petitioner was very calm, cool, and collected when he entered his plea (Ex. 18, WH II 33).

Petitioner's father, David Ricker ("Mr. Ricker"), also testified at the hearing (Ex. 18, WH II 35). He stated that Petitioner had not been diagnosed as bipolar until he was arrested (Ex. 18,

WH II 36). Mr. Ricker also stated that he believed the plea conversation put Petitioner under pressure, such that he was "not thinking right" (Tr. 38). Moreover, he claimed Petitioner entered his plea based on his family telling him to do so (Ex. 18, WH II 41).

After hearing brief argument from the parties, the state district court concluded, "having reviewed the court file, and . . . the motion to withdraw plea[,] and hearing the testimony of the witnesses sworn," Petitioner "ha[d] not met his burden to withdraw his plea" (Ex. 18, WH II 44). The court noted it was the judge who also took Petitioner's plea, and he was able to "observe [Petitioner's] demeanor at that plea, and he answered all of the questions under oath on [the plea paperwork" (Ex. 18, WH II 44-45). Accordingly, the state district court denied Petitioner's motion to withdraw his plea (Ex. 18, WH II 45).

Petitioner subsequently filed a certiorari appeal to the OCCA, filing the Brief of Petitioner on October 19, 2020 (Ex. 5 at 1). In that brief, Ms. Walterscheid argued in Proposition II, in pertinent part:

> PROPOSITION II
>
> PETITIONER SHOULD BE ALLOWED TO WITHDRAW HIS PLEA WHICH WAS NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY MADE BECAUSE IT WAS ENTERED UNDER DURESS AND AS THE RESULT OF FRUSTRATION, MISUNDERSTANDING, MISAPPREHENSION, AND WITHOUT DELIBERATION AS THE RESULT OF UNSEEMLY HASTE.

(Ex. 5 at 17) (capitalization in original). Relying almost entirely on state law, Petitioner argued that "because [he] did not knowingly, intelligently, and voluntarily enter his plea, which was entered under duress and as a result of frustration, misunderstanding, misapprehension, and without deliberation as the result of unseemly haste, the District Court erred in not allowing Petitioner to withdraw his plea" (Ex. 5 at 17-18). Petitioner also referred to the recess conversation regarding his plea as "three to five minutes of chaos" (Ex. 5 at 20). Petitioner acknowledged he

had "not been forthcoming" about his mental health issues when entering his plea but claimed he had suffered from mental health issues since the fifth grade (Ex. 5 at 20). He also pointed to his testimony from the withdrawal hearing stating that he felt rushed to make his decision (Ex. 5 at 21). Petitioner also stated that in addition to feeling blindsided he had "pressure exerted upon him from his family and [Mr. Faubert]" (Ex. 5 at 22). Towards the end of this proposition, Petitioner argued that "it cannot be said that Petitioner was fully cognizant at the time of his plea and able to make a voluntary and intelligent choice among the alternative courses of action" (Ex. 5 at 24) (internal quotations omitted). Petitioner cited two federal cases in support of this argument, but at no point did he raise a due process argument (Ex. 5 at 24). Further, at no point did Petitioner argue that his plea was involuntary because of the lack of a factual basis (Ex. 5 at 17-24).

On October 13, 2022, the OCCA issued its Order Denying Certiorari. In its opinion, the court stated, in pertinent part:

> In Proposition II, Petitioner argues that he should be allowed to withdraw the no contest plea because it was not entered knowingly, intelligently, and voluntarily but **was made under duress and as the result of frustration, misunderstanding, misapprehension, and without deliberation**.
>
> This Court reviews a trial court's decision to deny the withdrawal of a plea for an abuse of discretion. *Anderson v. State*, 2018 OK CR 13, ¶ 4, 422 P.3d 765, 767. An abuse of discretion is any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the matter at issue or a clearly erroneous conclusion and judgment. *Neloms v. State*, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170.
>
> On appeal, our primary concern in evaluating the validity of a guilty plea is whether the plea was entered voluntarily and intelligently. *Boykin v. Alabama*, 395 U.S. 238 (1969); *Ocampo v. State*, 1989 OK CR 38, ¶ 3, 778 P.2d 920, 921. Petitioner has the burden of showing that the plea was entered unadvisedly, through ignorance, inadvertence, influence or without deliberation, and that there is a defense to present to the jury. *Estell v. State*, 1988 OK CR 287, ¶ 7, 766 P.2d 1380, 1383; *Elmore v. State*, 1981 OK CR 8, ¶ 8, 624 P.2d 78, 80. The voluntariness of the plea is to be determined by examining the entire record. *Cox v. State*, 2006 OK CR 51, ¶ 28, 152 P.3d 244, 254 (overruled on other grounds, *State v. Vincent*, 2016 OK CR 7, 371 P.3d 1127).

> At the hearing on Petitioner's motion to withdraw plea, Petitioner testified to being "blindsided" and "caught off guard" by the suggestion that he enter a plea because he had been adamant about going to trial to prove his innocence. He also testified that he had mental health issues he had not previously disclosed to counsel—bipolar disorder and panic disorder. **In regard to the plea proceedings, he said he had not been truthful with counsel when going over the plea form and he felt rushed and did not have adequate time to review the plea paperwork before signing it**.
>
> After listening to testimony from Petitioner, his father, and plea counsel, the trial court denied the motion to withdraw finding that Petitioner had not met his burden of showing his plea was not entered knowingly and voluntarily. The trial court stated that the motion was being denied in part **because the judge had himself taken Petitioner's plea. The judge said he remembered Petitioner's demeanor in answering all of the questions from the completed Summary of Facts form, that he fully explained to Petitioner all of his rights, and that the plea was voluntarily entered**.
>
> A review of the plea hearing shows that **a knowing and voluntary plea was entered.** Petitioner told the court he understood all of the questions on the Summary of Facts form, voluntarily signed the plea form, that he was answering all questions truthfully and that he had not been threatened, coerced, or promised anything for entering the plea. He said he had not been treated for a mental illness and there was no medication he should have been taking. Plea counsel indicated he thought Petitioner was competent. The Summary of Facts form supports the trial court's finding of a knowing and voluntary plea.
>
> **Having thoroughly reviewed the record**, we find the trial court did not abuse its discretion in denying the motion to withdraw the plea. The record shows a knowing and voluntary plea was entered. Petitioner has failed to establish the pleas were the result of either inadvertence, ignorance, influence, or lack of deliberation, and he has failed to allege any defense. This proposition is denied.

(Ex. 1 at 4-7) (emphasis added).

In his Application for Post-Conviction, Petitioner expanded his claim that his plea was not knowing and voluntary (Ex. 13). Specifically, Petitioner raised the following claim as Proposition II:

PROPOSITION II

> THE DISTRICT COURT FAILED TO DEVELOP A FACTUAL BASIS FOR ACCEPTING THE PLEA TO ENSURE PETITIONER'S PLEA WAS COMPREHENDED ON ALL ESSENTIAL ELEMENTS WHERE PETITIONER'S PLEA WAS NOT KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY ENTERED.

(Ex. 13 at 18). In support, he claimed—almost identically to how he does in his petition—that his plea was not knowing or voluntary because there was no factual basis, and that fundamental due process "requires that a plea of guilty be shown, on the record, to have been entered knowingly, intelligently, and voluntarily" (Ex. 13 at 19). The state district court concluded that Petitioner "failed to show that the plea lacked a factual basis for the Court to accept his plea," and accordingly denied post-conviction relief (Ex. 14 at 5-6). In his Brief in Support of Post-Conviction Appeal, filed in the OCCA on May 13, 2024, Petitioner raised the same claim as in the state district court, merely adding that the state district court had abused its discretion in denying the application for post-conviction relief (Ex. 16 at 18). Addressing this claim in its Order Affirming Denial of Post-Conviction Relief, the OCCA held in pertinent part:

> All issues that were previously raised and ruled upon in direct appeal proceedings or previous post-conviction proceedings are barred as *res judicata*, and **all issues that could have been raised in those previous proceedings but were not, are waived, and may not be the basis of a subsequent post-conviction application**. 22 O.S.Supp.2022, § 1086; *Davis v. State*, 2005 OK CR 21, ¶ 2, 123 P.3d 243, 244. "In the interests of efficiency and finality, our judicial system employs various doctrines to ensure that issues are not endlessly re-litigated." *Smith v. State*, 2013 OK CR 14, ¶ 14, 306 P.3d 557, 564. Post-conviction review is not an opportunity for a second chance to argue claims of error in hopes that doing so in a different proceeding may change the outcome. *Turrentine v. State*, 1998 OK CR 44, ¶ 12, 965 P.2d 985, 989. "Simply envisioning a new method of presenting an argument previously raised does not avoid the procedural bar." *McCarty v. State*, 1999 OK CR 24, ¶ 9, 989 P.2d 990, 995. "Appellate jurisprudence was not created or designed to allow a person convicted of a crime to continually challenge a conviction with new assertions of error." *Mayes v. State*, 1996 OK CR 28, ¶ 14, n.3, 921 P.2d 367, 372 n.3. Petitioner's propositions of error II and III were raised in the Petition for Writ of Certiorari and addressed on the merits. Therefore, they are barred as *res judicata*. 22 O.S.Supp.2022, § 1086; *Davis*, 2005 OK CR 21, ¶ 2,

> 123 P.3d at 244. Petitioner has not established any sufficient reason for **inadequately raising his current grounds** for relief in his previous Petition for Writ of Certiorari. *Id.*

(Ex. 17 at 3-4) (emphasis added).

**B. Preliminary Matters**

Petitioner undoubtedly fails to meet his burden of showing the OCCA's resolution of this claim was contrary to or an unreasonable application of the clearly established law, or that it rests on an unreasonable determination of the facts. Nevertheless, Respondent again finds it necessary to address some preliminary issues before reaching that discussion. The claim Petitioner raises in his petition is nearly identical to the claim raised to the OCCA on post-conviction appeal (Doc. 2 at 17-18; Ex. 16 at 17-18). And to be sure, he raised a challenge to the voluntariness of his plea in his Brief of Petitioner on certiorari appeal to the OCCA, and the OCCA adjudicated such claim on the merits (Ex. 1 at 4-7; Ex. 5 at 17-24). But to the extent the claim raised on post-conviction appeal expanded upon the claim raised on certiorari appeal—by arguing the plea was not knowing and voluntary because of the lack of a factual basis, in addition to asserting a due process violation—that claim is procedurally barred from this Court's review.

The Tenth Circuit's decision in *Welch v. Workman* is applicable here. In that case the petitioner argued on direct appeal to the OCCA that the State's questions on cross-examination at trial amounted to prosecutorial misconduct which violated due process. *Welch v. Workman*, 639 F.3d 980, 994 (10th Cir. 2011). But on post-conviction appeal, he "expanded his due process argument to allege not only the cross-examination questions but also the statements in closing argument, together, constituted an improper comment on [the petitioner's] post-arrest silence." *Id.* In rejecting this argument, the OCCA held the claim was "barred by res judicata because the comments during cross-examination were considered on direct appeal and [the petitioner] could

not expand the claim in his post-conviction proceeding." *Id.* On habeas, this Court also considered his argument regarding cross-examination and closing statements as discrete issues in denying relief, then granted a certificate of appealability to the Tenth Circuit on multiple issues, including this one. *Id.* at 987, 994. On appeal, the Tenth Circuit affirmed the denial of habeas relief. *Id.* at 994-95. The court noted that, generally, a state court's refusal to readjudicate a claim on the ground that it has been previously determined "does not indicate that the claim has been procedurally defaulted." *Id.* at 994 (quoting *Cone v. Bell*, 556 U.S. 449, 467 (2009)). Nevertheless, the Court also noted that "A claim is **procedurally barred** however, when it has not been fairly presented to the state courts for their initial consideration." *Id.* (alteration adopted) (emphasis added). Addressing the expanded due process claim, the court concluded that because the petitioner expanded his argument on post-conviction appeal, the court would not consider the expanded argument "because it was not raised on direct appeal[.]" *Id.* at 995. Accordingly, the Court concluded the petitioner was "procedurally barred from expanding his argument or from raising new issues." *Id.* (citing *Smallwood v. Gibson*, 191 F.3d 1257, 1268 n.8 (10th Cir. 1999)).

Similarly here, it is clear Petitioner impermissibly expanded his challenge to the voluntariness of his plea on post-conviction appeal (Ex. 5 at 17-24; Ex. 13 at 19-20; Ex. 16 at 19-20). While his Brief of Petitioner on certiorari appeal—focusing entirely on state law—asserted his plea was involuntary because of duress, misunderstanding, and unseemly haste, his argument on post-conviction appeal expanded this claim by arguing the plea was involuntary because of the lack of a factual basis, and that there was a due process violation (Ex. 5 at 17-24; Ex. 16 at 19-20). Thus, to the extent Petitioner raises only the expanded portion of this claim from post-conviction appeal in his petition, that claim is procedurally barred in its entirety, and this Court should not review it. *Welch*, 639 F.3d at 994-95. Indeed, the OCCA itself explicitly stated in the Order

Affirming Denial of Post-Conviction Relief that all claims not previously raised were waived (Ex. 17 at 3-4).

Moreover, to the extent Petitioner seeks to raise a stand-alone claim of a lack of a factual basis for his plea, this claim is also procedurally barred because it was waived by his failure to raise such a claim on certiorari appeal. Indeed, such a claim was not raised in the Brief of Petitioner on certiorari appeal (Ex. 5), and the OCCA expressly found any such claims were waived in its Order Affirming Denial of Post-Conviction Relief (Ex. 17 at 3). Okla. Stat. tit. 22, § 1086. The Tenth Circuit has "repeatedly determined that § 1086 is independent of federal law and an adequate procedural bar." *Reese*, 778 F. App'x at 557 (citing *Hale*, 227 F.3d at 1330 n.15). As such, this claim is barred from this Court's review for this reason as well.

Furthermore, Petitioner fails to acknowledge his procedural default, much less allege cause and prejudice or a fundamental miscarriage of justice to overcome that default. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (holding that the only way to overcome an adequate and independent procedural bar is to allege cause and prejudice, or that application of that bar would result in a fundamental miscarriage of justice). To the extent he raises a claim in Ground I that Ms. Walterscheid was ineffective for failing to raise such a claim on certiorari appeal, this does not meet his burden of overcoming his procedural default because that claim is meritless, as there was a factual basis for his plea. *Abrams v. Williams*, No. CIV-09-554-M, 2011 WL 475013, at *6 (W.D. Okla. Jan. 12, 2011) (unpublished) (holding that the petitioner's ineffective assistance of counsel claim failed on the merits, and thus was not sufficient cause to excuse procedural default).

Notably, because Petitioner's claim that his plea was involuntary rests only on the argument that the court lacked a factual basis and there was a due process violation—not that his plea was the result of duress, misunderstanding, or unseemly haste as argued on certiorari appeal—

his claim is procedurally barred in its entirety, and this court may not liberally construe his petition as raising any other argument. *Welch*, 693 F.3d at 994-95 (holding expanded portion of claim was procedurally barred and would not be considered); *Celli*, 40 F.3d at 327. Regardless, because Petitioner otherwise fails to meet his burden of satisfying § 2254(d), his claim fails for the reasons discussed below.

**C. Petitioner fails to satisfy § 2254(d).**

To begin, Petitioner's counseled habeas does not acknowledge the OCCA's basis for denying relief, let alone support—beyond his conclusory musings—that it was contrary to clearly established Supreme Court law, or that it was legally or factually unreasonable (Doc. 2 at 17-18). Accordingly, Petitioner has forfeited any relevant argument that he can satisfy § 2254(d). *See Hancock*, 798 F.3d at 1011. And even accepting that this claim was adequately raised, relief should be denied. Respondent notes further that Petitioner's claim relies almost entirely on state law, save a single citation to one federal case, and this Court must defer to the OCCA's interpretation of state law (Doc. 2 at 17-18). *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Bradshaw v. Richey*, 546 U.S. 74. 76 (2005) ("[A] State court's interpretation of state law, including one announced on direct appeal of the challenged conviction, **binds** a federal court sitting in habeas corpus") (emphasis added). Moreover, to the extent the OCCA's decision on certiorari appeal rests on its determination from the record that "Petitioner told the court he understood all of the questions on the Summary of Facts form, voluntarily signed the plea form, that he was answering all questions truthfully and that he had not been . . . coerced, or promised anything for entering the plea," and that Mr. Faubert testified Petitioner was competent, these are determinations of fact to

which this Court must defer.[11] *Black*, 682 F.3d at 896-97 (refusing to grant relief under § 2254(d)(2) because the petitioner had failed to present clear and convincing evidence to rebut a state court's factual finding). In any event, Petitioner's claim in Ground II fails for many of the same reasons as his claim in Ground I.

Indeed, as discussed in Respondent's analysis of Ground I, this Court has previously concluded "there is no federal constitutional requirement for the district court to ascertain a factual basis for [a defendant's] plea." *Ruble*, 2006 WL 3693371, at *4. While the Court ultimately concluded there was a factual basis for the petitioner's plea in that case, before reaching that conclusion this Court noted that "there is no federal constitutional requirement for the district court to ascertain a factual basis for the plea." *Id.* Further, this conclusion is in accord with the decisions of the Tenth Circuit, and other federal circuits that have addressed this issue. *See, e.g.*, *Perkis v. Sirmons*, No. 06-6147, 201 F. App'x 648, 651 (10th Cir. Oct. 24, 2006) (unpublished) ("As an initial matter, unless a defendant claims factual innocence **while pleading guilty**, there is **no federal constitutional requirement** for the district court to ascertain a factual basis for the plea.") (emphasis added) (citing *Berget v. Gibson*, No. 98-6381, 1999 WL 586986, at *4-6 (10th Cir. 1999) (unpublished)). Indeed, every federal circuit court to address this issue—which is nearly all of them—has reached the same conclusion. *Eggers v. Warden*, 826 F.3d 873, 876 (6th Cir. 2016) ("Absent a claim of innocence during the plea hearing, there is no constitutional requirement that

[11] Indeed, Petitioner does not claim the OCCA's factual determinations are inaccurate, nor does he provide clear and convincing evidence to support such a claim. Moreover, the record supports that these factual determinations are accurate and reasonable, particularly where Petitioner repeatedly informed the state district court that he answered the questions in the plea paperwork truthfully, and that he was pleading guilty of his own free will (Ex. 18, Tr. 207-16). *See Johnson v. Crow*, No. 21-6093, 2022 WL 97080, at *4 (10th Cir. 2022) (unpublished) (concluding that even despite the plea form providing "evidence contrary to the state . . . court's finding of fact," there was not clear and convincing evidence to overcome the "presumption of correctness due factual findings made by the state court.").

a trial judge inquire into the factual basis of a plea.") (internal quotations omitted) (citing *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975)); *Loftis v. Almager*, 704 F.3d 645, 648 (9th Cir. 2012) ("[the petitioner] cannot obtain habeas relief because the state trial court's failure to find a factual basis for his no contest plea—unaccompanied by protestations of innocence—does not present a constitutional issue cognizable under 28 U.S.C. § 2254."); *Meyers v. Gillis*, 93 F.3d 1147, 1151 (3d Cir. 1996) ("We conclude that the due process clause does not impose on a state court the duty to establish a factual basis for a guilty plea absent special circumstances."); *Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) (concluding that while states may require judges to ensure a factual basis for a defendant's plea, this is not a "result of constitutional compulsion," and thus "[s]hortcomings in compliance with such requirements do not entitle prisoners to collateral relief in federal court"); *Smith v. McCotter*, 786 F.2d 697, 702 (5th Cir. 1986) ("State courts are under no constitutional duty to establish a factual basis for the guilty plea prior to its acceptance, unless the judge has specific notice that such an inquiry is needed."); *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984) ("[D]ue process does not mandate a factual basis inquiry by State courts."); *Wallace v. Turner*, 695 F.2d 545, 546 (11th Cir. 1983) (holding the Due Process Clause does not impose a constitutional duty on state trial judges to ascertain a factual basis before accepting a plea of guilty or nolo contendere that is not accompanied by a claim of innocence); *Wabasha v. Solem*, 694 F.2d 155, 157 (8th Cir. 1982) (noting factual basis for a plea is not required by the Constitution); *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir. 1975) (noting there is "no constitutional requirement that a state court establish a factual basis" for a plea). Thus, Petitioner's claim fails because any claim of ineffective assistance of appellate counsel is meritless because there is no constitutional requirement of a factual basis. *Miller*, 354 F.3d at 1298 (appellate counsel is not ineffective for failing to raise a meritless claim).

Regardless, Petitioner's claim also fails because there was a factual basis for Petitioner's plea. Again, Petitioner's argument ignores T.R. and Ms. Doughty's testimonies at trial (Ex. 18, Tr. 159, 177). T.R. testified that Petitioner touched his "pee pee" and that he was around five years old at the time (Ex. 18, Tr. 163-64). He also stated that this occurred in his bedroom while he was sleeping, and that the touching was under his clothes and skin to skin (Ex. 18, Tr. 165-67). Moreover. Ms. Doughty's testimony showed that when she came home on June 30, 2017, T.R. made similar statements to her (Ex. 18, Tr. 181-84). Additionally, during Petitioner's plea the state district court and the parties discussed a factual basis for the plea (Ex. 18, Tr. 213). Specifically, the state district court asked if there was a factual basis for the plea, and the following discussion was had:

> Mr. Faubert: **Just the testimony,** Your Honor.
>
> The court: Okay. Does the State wish to stand on the stipulation?
>
> Ms. Strain: Yes, sir. I believe with the no contest plea, [Petitioner] is stipulating that **if . . . additional evidence were presented to the jury or a judge as the trier of fact, the trier of fact could find him guilty of the crimes charged**, both Lewd Molestation and Possession of Juvenile Pornography.
>
> The court: Okay. And you heard what the State put on the record. Is that what you're stipulating to, sir?
>
> . . .
>
> [Petitioner]: **Yes.**
>
> The court: And are you . . . in fact stipulating that **the State could prove beyond a reasonable doubt** that you, in fact, **violated both Count 1, Lewd Molestation, and Count 2, Possession of Juvenile Pornography**?
>
> [Petitioner]: **Yeah,** she's an excellent artist, Your Honor.
>
> The court: Huh?
>
> . . .

> [Petitioner]: **Yes, sir, I understand**.
>
> The court: So you are saying and **you are stipulating that the State could prove beyond a reasonable doubt** that you did, in fact, **commit both of those offenses**?
>
> [Petitioner]: **Yes,** Your Honor.

(Ex. 18, Tr. 213-14) (emphasis added). Then the state district court ensured that Petitioner understood the minimum sentences he faced on both counts before accepting Petitioner's plea (Ex. 18, Tr. 215-16). Thus, even assuming *arguendo* that a factual basis was required, there was a factual basis for Petitioner's plea. Because there was a factual basis, any claim by Petitioner that the lack of a factual basis rendered his plea involuntary is wholly meritless (Ex. 1 at 4-7; Ex. 17 at 6-7).[12] *Porter v. McKune*, No. 06-3133, 189 F. App'x 738, at *2 (10th Cir. Jul. 18, 2006) (unpublished) (holding that to the extent the Kansas Court of Appeals determined—based on state law—that the facts showed there was a sufficient factual basis and that the plea was knowing and voluntary, the court would not second-guess that courts application of state law, and also concluding that "no reasonable jurist could accept [the petitioner's] argument that his plea was not knowing and voluntary"); *Carpenter v. State*, 929 P.2d 988, 997 (Okla. Crim. App. 1996) (affirming denial of motion to withdraw plea where there was a sufficient factual basis for the plea).

[12] Again, Petitioner's entire claim in this ground relies on the theory that there was no factual basis for his plea, so Respondent only analyzes that claim (Doc. 2 at 17-18) and does not address any argument raised on certiorari appeal that his plea was involuntary because of duress, misunderstanding, or unseemly haste (Ex. 5 at 17-24). *Williams v. Dowling*, No. 19-CV-0530-GKF-FHM, 2020 WL 3865078, at *4 n.5 (N.D. Okla. Jul. 8, 2020) (unpublished) ("When a litigant appears pro se, a district court must liberally construe the litigant's pleadings, overlooking grammatical errors and confusion of legal theories, thereby holding the pro se litigant's pleadings to a less stringent standard than pleadings filed by lawyers. But here, petitioner's pleadings were drafted by counsel and the rule of liberal construction **does not apply**. The Court therefore takes the arguments as they are presented, keeping in mind that in all civil proceedings pleadings must be construed so as to do justice.") (alterations adopted) (internal quotations and citations omitted).

**D. Conclusion**

For these reasons, even accepting that Petitioner's claim is reviewable, he has not shown that the OCCA's resolution of this claim was contrary to or an unreasonable application of the clearly established law, or that it rests on an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to relief on Ground II. 28 U.S.C. § 2254(d).

**GROUND III**

**PETITIONER'S INDIAN COUNTRY CLAIM IS PROCEDURALLY BARRED FROM THIS COURT'S REVIEW AND FAILS FOR A LACK OF CLEARLY ESTABLISHED LAW. REGARDLESS, HE FAILS TO SHOW THE OCCA'S DECISION WAS CONTRARY TO OR AN UNREASONABLE APPLICATION OF THE CLEARLY ESTABLISHED LAW, OR THAT IT WAS FACTUALLY UNREASONABLE.**

In Ground III, Petitioner claims that the state court "lacked sovereign authority over Indian country because there is clearly a federal preemption and no analysis which ignores the federal claim is sufficient to be a determination on the merits" (Doc. 2 at 19).[13] In support, Petitioner provides a lengthy recitation of various treaties and congressional acts, all in an effort to show that the State of Oklahoma has no prosecutorial authority in Indian country, regardless of the Indian status of the parties involved (Doc. 2 at 19-29). But this claim is procedurally barred because it relies entirely on the enhanced portion added to the claim on post-conviction, and further for a lack of clearly established law. Regardless, Petitioner fails to show that the OCCA's determination was

[13] Petitioner provides nothing to support his argument that the OCCA's denial of relief on post-conviction appeal was not a determination on the merits, and any such claim is therefore forfeited. *Hancock*, 798 F.3d at 1011. Further, such a claim ignores that the OCCA's determination of this claim on the merits was on certiorari appeal, and that the enhanced portion of the claim is procedurally barred. *Welch*, 639 F.3d at 994-95. Regardless, even assuming arguendo that the post-conviction appeal version of this claim was not adjudicated on the merits, it would fail under *de novo* review because the Supreme Court has repeatedly concluded that the federal government has no authority over non-Indian on non-Indian crime.

contrary to or an unreasonable application of clearly established law or based on an unreasonable determination of fact.

**A. Background**

Petitioner first argued in the Brief of Petitioner on certiorari appeal that the state district court of Craig County, Oklahoma was "without jurisdiction to adjudicate the charges brought against petitioner by the State of Oklahoma" (Ex. 5 at 9) (capitalization omitted). In support, Petitioner argued that "Indian country is subject to exclusive federal or tribal criminal jurisdiction except as otherwise expressly provided by law" (Ex. 5 at 10) (internal citations and quotations omitted). Petitioner relied on treaties reached between the federal government and the Cherokee Nation in 1833, 1835, 1846, and 1866 (Ex. 5 at 11-13). Further, Petitioner argued that the "situs of the offenses charged in the instant case" was within the boundaries of the Cherokee Nation (Ex. 5 at 13-14). Additionally, Petitioner argued that T.R. had been recognized as a registered citizen of the Cherokee Nation (Ex. 5 at 15). Regarding himself, Petitioner stated that he was attempting to "trace his genealogy" to determine whether he was "eligible for tribal enrollment." Petitioner averred that "the evidence and considerations support a single conclusion: the offenses for which Petitioner was tried in the State of Oklahoma occurred within the Cherokee Nation Reservation," and thus the State of Oklahoma did not have jurisdiction (Ex. 5 at 15-16).

On November 6, 2020, the OCCA issued an Order Remanding for Evidentiary Hearing (Ex. 7 at 1). The court explained that Petitioner's claim in Proposition I raised "separate questions regarding: (a) the victim's status as an Indian; (b) whether the crimes occurred in Indian Country; and (c) Petitioner's status as an Indian" (Ex. 7 at 2). The Court concluded that these issues required fact-finding, and accordingly remanded the case to the state district court for an evidentiary hearing (Ex. 7 at 2). Further, the court ordered that the state district court make written findings of fact and

conclusions of law on the jurisdiction claim, addressing "the status of [T.R.] and Petitioner as Indians," and whether "the crime occurred in Indian Country" (Ex. 7 at 3-4).

In the Brief on Remand, the State argued that neither T.R. nor Petitioner were Indians at the time of the offense, and that the State maintained "concurrent jurisdiction over this case" (Ex. 2, O.R. Supp. I 7, 11). Petitioner filed his counseled Brief on Remand on December 28, 2020 (Ex. 2, O.R. Supp. I 24-33). In that brief, Petitioner argued that T.R.'s mother, Nautasha May Doughty, was a registered member of the Cherokee Nation since 2002, and that T.R. had "some degree of Indian blood" (Ex. 2, O.R. Supp. I 27-28). Petitioner conceded that he was not a registered member of the Cherokee Nation, but stated he was continuing efforts to "trace his ancestry and to obtain documentation of his lineage" (Ex. 2, O.R. Supp. I 28). Further, Petitioner asserted that his crime occurred within the traditional boundaries of the Cherokee Nation (Ex. 2, O.R. Supp. I 28-33). Then, on January 4, 2021, the parties filed an Agreed Stipulation, stipulating to the following:

1. [T.R.] was born [i]n March . . . 2012.

2. The crimes alleged against Petitioner occurred between March 9, 2016, and June 30, 2017.

3. [T.R.] was enrolled with the Cherokee Nation on July 6, 2017.

4. [T.R.] possesses some degree of Indian blood.

5. [Ms. Doughty], born June 26, 1994, is the biological mother of T.R. She is a registered citizen of the Cherokee Nation as of January 7, 2002.

6. The Cherokee Nation is an Indian Tribal Entity recognized by the federal government.

7. Petitioner . . . is not a member of any federally recognized tribal entity.

8. The defendant's crimes occurred [on] . . . Scraper St., in Vinita, Oklahoma.

9. The above-listed location falls within the geographic area set aside for the Cherokee Nation[.]

(Ex. 2, O.R. Supp. I 39-40). The evidentiary hearing was held the same day (Ex. 2, O.R. Supp. I 41). The state district court issued its Order On Evidentiary Hearing on February 4, 2021 (Ex. 2, O.R. Supp. I 43). First, the court found Petitioner was not an Indian (Ex. 2, O.R. Supp. 44). Regarding T.R.'s Indian status, the court concluded that T.R. "(1) ha[d] some Indian blood and (2) [was] recognized as an Indian by a tribe or the federal government" (Ex. 2, O.R. Supp. I 44-45). However, the court also found that while T.R. was an Indian, he "was not enrolled at the time of the crime" (Ex. 2, O.R. Supp. I 44-45). Further, the court concluded that the crime occurred in Indian Country (Ex. 2, O.R. Supp. I 46).

The parties filed supplemental briefing with the OCCA following remand, with the State filing the Supplemental Brief of Respondent After Remand on March 1, 2021, and Petitioner filing the Supplemental Brief of Petitioner After Remand on March 30, 2021 (Ex. 8 at 1; Ex. 9 at 1). The State argued in its brief that the state district court had jurisdiction over the case because neither T.R. nor Petitioner were Indians at the time of the offense, and that the State of Oklahoma maintained concurrent jurisdiction over the case (Ex. 8 at 8-25). Petitioner argued in his counseled brief that T.R. was an Indian even though he was not a registered member of the Cherokee Nation until roughly a week after the charges were filed (Ex. 9 at 10-13). Regarding his own Indian status, Petitioner acknowledged that he was not an enrolled member of any federally recognized tribe, but that he was continuing efforts to "trace his ancestry and to obtain documentation of his lineage" (Ex. 9 at 13). Further, Petitioner argued that his crime occurred in Indian Country (Ex. 9 at 13-16). The OCCA—on June 22, 2021—issued another order remanding the case for an evidentiary hearing, this time on T.R.'s Indian status (Ex. 10 at 1). In so doing, the OCCA ordered that the State district court was to consider "the totality of the circumstances in making the determination regarding whether [T.R.] was affiliated with or had sufficient connection with a federally

recognized tribe at the time of the crime" (Ex. 10 at 4). The evidentiary hearing was held on September 21, 2021 (Ex. 2, O.R. Supp. II 55). The state district court issued its Order on Evidentiary Hearing on Indian Status of Child Victim on October 27, 2021 (Ex. 2, O.R. Supp. II 125-133). In that order, the state district court concluded as follows:

> Because Petitioner failed to show that T.R. was recognized as an Indian at the time of the offense, this [c]ourt concludes that the defendant fails to set forth *prima facie* evidence of T.R.'s Indian status at the time of the offense. Consequently, this [c]ourt concludes that T.R. was not an Indian at the time of the offenses.

(Ex. 2, O.R. Supp. II 133).

At the OCCA, the parties again filed supplemental briefs following the second remand (Ex. 11 at 1; Ex. 12 at 1). While the case was pending, the United States Supreme Court decided *Castro-Huerta*. On October 13, 2022, the OCCA denied certiorari (Ex. 1 at 1). In so holding, the OCCA wrote as follows:

> In Proposition I, Petitioner argues that under *McGirt v. Oklahoma,* 140 S.Ct. 2452 (2020), the District Court of Craig County/the State of Oklahoma were without jurisdiction to adjudicate the charges brought against him because: 1) he was possibly Indian; 2) his victim was Indian; and 3) and the charged crimes occurred in Indian Country.[2]
>
> > [2] Pursuant to *McGirt*, this Court remanded the case to the District Court where it was determined that Petitioner was **not Indian**, [T.R.] had some contacts but was not registered with the Cherokee Nation until six days after the commission of the charged crimes, and the crimes occurred in Tahlequah, within the Cherokee Nation Reservation, which is an Indian Tribal Entity recognized by the federal government.
>
> While Petitioner's case has been pending on appeal, the Supreme Court decided *Oklahoma v. Castro-Huerta*, 142 S.Ct. 2486 (2022) holding that the State of Oklahoma and the federal government have concurrent jurisdiction to prosecute a non-Indian defendant for crimes committed against an Indian victim in Indian Country. *Id.* 142 S.Ct. at 2491. The Supreme Court found that neither the General Crimes Act, 18 U.S.C. § 1152, nor Public Law 280, 67 Stat. 588, have pre-empted Oklahoma's concurrent jurisdiction to prosecute non-Indians for crimes against Indians in Indian Country. *Id.* 142 S.Ct. at 2494, 2500. The Supreme Court further explained that no principle of tribal self-government preempts the State's authority

to prosecute; and that the Oklahoma Enabling Act does not preempt Oklahoma's authority to prosecute. *Id.* 142 S.Ct. at 2504.[3]

> [3] In a supplemental brief tendered for filing, Petitioner acknowledges *Castro-Huerta* but argues it should be applied only prospectively. The State responds with an *Objection to Petitioner's Motion for Leave to File Tendered Supplemental Brief*, arguing that Petitioner's tendered brief does not comply with this Court's rules and should be denied; and even if this Court were to find Petitioner's argument proper for supplemental briefing, *Castro-Huerta* itself forecloses Petitioner's argument. Petitioner's supplemental brief is accepted for filing and the State's objection is denied. *See* Rule 3.4(F)(2), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2022).

**Petitioner has not established that he is Indian**. Therefore, pursuant to *Castro-Huerta,* the State of Oklahoma and the federal government have concurrent jurisdiction to prosecute Petitioner for the crime of lewd molestation. *See State v. Ward*, 2022 OK CR 16, ¶¶ 4-6, 516 P.3d 261[] (*Castro-Huerta* applied to cases pending on appeal before this Court). This proposition is denied.

(Ex. 1 at 4-7) (emphasis added).

Petitioner subsequently filed his Application for Post-Conviction Relief in the state district court on August 11, 2023, again raising a claim that the State courts lacked prosecutorial authority (Ex. 13 at 20). Specifically, Petitioner argued that "the district court lacked jurisdiction because of a federal preemption" (Ex. 13 at 20). The state district court denied the Application for Post-Conviction Relief on March 15, 2024, and in doing so concluded that Petitioner's claim was foreclosed by *Castro-Huerta* (Ex. 14 at 6). Petitioner appealed the denial of post-conviction relief to the OCCA, raising the following claim in his Brief in Support of Post-Conviction Appeal:

PROPOSITION III

THE DISTRICT COURT ABUSED ITS DISCRETION [IN] DENYING THE PETITIONER'S APPLICATION FOR POST-CONVICTION RELIEF FAILING TO ADDRESS THE ISSUE OF FEDERAL PREEMPTION AND NO ANALYSIS WHICH IGNORES THE FEDERAL CLAIM IS SUFFICIENT TO BE A DETERMINATION ON THE MERIT[S].

(Ex. 16 at 20) (capitalization and errors in syntax in original).[14] In this Brief in Support of Post-Conviction Appeal, Petitioner argued first that the "land patent that was issued to the Cherokee Nation on December 31, 1838, has never been withdrawn by Congress and still applies in full force" (Ex. 16 at 21). Further, Petitioner cited to various treaties reached between Congress and the Cherokee Nation to support his claim (Ex. 16 at 20). Next, Petitioner relied on a decision by an unidentified federal district court holding that the Surface Mining Control and Reclamation Act preempts application of Oklahoma laws regulating surface coal mining and reclamation activities within the exterior boundaries of the Creek Reservation (Ex. 16 at 20-21). Finally, Petitioner argued that *Castro-Huerta* "does not vest Oklahoma with authority" (Ex. 16 at 21). In its Order Affirming Denial of Post-Conviction Relief, the OCCA held as follows:

> All issues that were previously raised and ruled upon in direct appeal proceedings or previous post-conviction proceedings are barred as *res judicata*, and **all issues that could have been raised in those previous proceedings but were not, are waived, and may not be the basis of a subsequent post-conviction application**. 22 O.S.Supp.2022, § 1086; *Davis v. State*, 2005 OK CR 21, ¶ 2, 123 P.3d 243, 244. "In the interests of efficiency and finality, our judicial system employs various doctrines to ensure that issues are not endlessly re-litigated." *Smith v. State*, 2013 OK CR 14, ¶ 14, 306 P.3d 557, 564. Post-conviction review is not an opportunity for a second chance to argue claims of error in hopes that doing so in a different proceeding may change the outcome. *Turrentine v. State*, 1998 OK CR 44, ¶ 12, 965 P.2d 985, 989. "Simply envisioning a new method of presenting an argument previously raised does not avoid the procedural bar." *McCarty v. State*, 1999 OK CR 24, ¶ 9, 989 P.2d 990, 995. "Appellate jurisprudence was not created or designed to allow a person convicted of a crime to continually challenge a conviction with new assertions of error." *Mayes v. State*, 1996 OK CR 28, ¶ 14, n.3, 921 P.2d 367, 372 n.3. Petitioner's propositions of error II and III were raised in the Petition for Writ of Certiorari and addressed on the merits. Therefore, they are barred as *res judicata*. 22 O.S.Supp.2022, § 1086; *Davis*, 2005 OK CR 21, ¶ 2, 123 P.3d at 244. Petitioner has not established any sufficient reason for **inadequately raising his current grounds for relief in his previous Petition for Writ of Certiorari**. *Id.*

[14] Petitioner's claims raised in the Brief in Support of Post-Conviction Appeal appear to be identical to those raised in the petition, except for the proposition heading (Ex. 16 at 20; Doc. 2 at 19).

(Ex. 17 at 3-4) (emphasis added).

**B. Preliminary Matters**

As Respondent will discuss in § C of this ground, Petitioner's claim in Ground III undoubtedly fails in light of the Supreme Court's decision in *Castro-Huerta*. Nevertheless, it is again necessary for Respondent to discuss two preliminary matters that also warrant denying relief. Specifically, this claim is procedurally barred for reasons similar to those discussed in Respondent's analysis of Ground II. Further, this claim fails for a lack of clearly established law.

**(1) Petitioner's claim is procedurally barred, and he fails to allege cause and prejudice or a fundamental miscarriage of justice to overcome this bar.**

Petitioner's Ground III is also procedurally barred. Indeed, Petitioner expanded his claim for a lack of jurisdiction between his Brief of Petitioner on certiorari appeal—as well as his supplemental briefs at the OCCA—and his claim raised to the OCCA on post-conviction appeal. *Welch*, 639 F.3d at 994-95. Indeed, in his Brief of Petitioner filed on certiorari appeal, Petitioner claimed there was a lack of jurisdiction because the crimes occurred in Indian Country, T.R. was a registered member of the Cherokee Nation, and Petitioner was seeking to establish that he was eligible for tribal enrollment (Ex. 5 at 13-16). The OCCA remanded these issues for an evidentiary hearing on November 6, 2020 (Ex. 7 at 3-4). The state district court concluded, following the evidentiary hearing, that Petitioner was not an Indian (Ex. 2, O.R. Supp. I, 44-45). Back at the OCCA, Petitioner argued exclusively that T.R. was an Indian even if he was not registered at the time of the crimes (Ex. 9 at 10-13). He never argued that the State jurisdiction was preempted regardless of Indian status (Ex. 9 at 10-13). Further, even after a second remand to determine T.R.'s Indian status—wherein the state district court determined he was not an Indian (Ex. 2, O.R. Supp. II 125-33)—Petitioner never argued that State jurisdiction was preempted regardless of Indian status, only that T.R. was an Indian for purposes of federal law (Ex. 12 at 9-16).

Accordingly, when Petitioner argued in the Brief in Support of Post-Conviction Appeal that jurisdiction was preempted regardless of Indian status, this was an impermissible expansion of his argument on certiorari appeal (Ex. 16). And while the OCCA's determination in affirming the denial of post-conviction relief that this claim was barred by *res judicata* would not prevent review of this claim *as raised on direct appeal* (Ex. 17 at 3), the expanded portion of this claim *as raised on post-conviction review* is procedurally barred from the Court's review. *Welch*, 639 F.3d at 994-95. Further, because Petitioner relies only on the expanded portion of this claim from post-conviction appeal (Doc. 2 at 19-29)—that prosecutorial authority is preempted regardless of Indian status—the entirety of this claim is barred from this Court's review. *Id.*; *see Celli*, 40 F.3d at 327 (holding counseled petitions are not entitled to liberal construction).

Additionally, Petitioner fails to acknowledge this procedural default, much less allege cause and prejudice or a fundamental miscarriage of justice (Doc. 2 at 19-29). *Coleman*, 501 U.S. at 750 (holding that the only way to overcome an adequate and independent procedural bar is to allege cause and prejudice, or that application of that bar would result in a fundamental miscarriage of justice). Accordingly, this claim is procedurally barred from this Court's review. *Id.*; *Welch*, 639 F.3d at 994-95. In any event, this claim also fails for a lack of clearly established law, and because Petitioner fails to satisfy § 2254(d).

**(2) Petitioner's claim fails for a lack of clearly established law.**

Petitioner's claim also fails for a lack of clearly established law. Specifically, Supreme Court case law provides no clear answer as to what, if any, constitutional or other hook makes an Indian country claim like Petitioner's redressable on habeas review. Habeas review is available only where a petitioner alleges he is imprisoned "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Furthermore, even prior to the enactment of the

AEDPA, the Supreme Court "long applied equitable limitations to narrow the broad sweep of federal habeas jurisdiction." *Reed v. Farley*, 512 U.S. 339, 356 (1994) (Scalia, J., joined by Thomas, J., concurring in part and concurring in the judgment). "One class of those limitations consists of substantive restrictions upon the type of claim that will be entertained." *Id.* Specifically, habeas review lies only for *constitutional* error or, where a *non-constitutional* violation of a federal statute is involved, only if "the error qualifies as a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Reed*, 512 U.S. at 348 (plurality) (quotation marks omitted, alteration adopted); *cf. also id.* at 355-56 (Scalia, J., concurring in part and concurring in the judgment) ("I thus agree that the 'fundamental defect' test . . . is the appropriate standard for evaluating alleged statutory violations under both §§ 2254 and 2255."). Here, no Supreme Court case actually *holds* that Indian country claims are cognizable on habeas either as due process claims or fundamental federal statutory claims. In any event, this Court need not decide this complicated procedural issue because Petitioner's claim fails for lack of clearly established law for a more simple reason.

No Supreme Court case holds that states lack prosecutorial authority within Indian country regardless of Indian status. In fact, the Supreme Court has recently said the opposite: "Under the Constitution, States have jurisdiction to prosecute crimes within their territory except when preempted (in a manner consistent with the Constitution) by federal law or by principles of tribal self-government." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 652-53 (2022). Put differently, "[s]tates do not need a permission slip from Congress to exercise their sovereign authority. In other words, the default is that States have criminal jurisdiction in Indian country unless that jurisdiction is *preempted*." *Id.* at 653. Petitioner certainly cites to no Supreme Court case holding that the State lacks jurisdiction over non-Indians within the Cherokee Nation. His claim fails for lack of clearly

established law.

In any event, Petitioner's claim indisputably fails on its merits, as shown next.

**C. Regardless, Petitioner's claim fails under § 2254(d).**

It appears that Petitioner is arguing the State of Oklahoma could not prosecute him regardless of his or T.R.'s Indian status.[15] But nothing could be further from the truth. *See United States v. Langford*, 641 F.3d 1195, 1197-1200 (10th Cir. 2011) (noting that with respect to Indian country crimes involving only non-Indians, the Supreme Court has repeatedly held that state courts have "exclusive jurisdiction[.]"); *see United States v. Ramsey*, 271 U.S. 467, 469 (1926); *Draper v. United States*, 164 U.S. 240, 242 (1896); *United States v. McBratney*, 104 U.S. 621 (1881).

In *McBratney*, the Supreme Court determined the federal government did not have authority to prosecute crimes involving non-Indians in Indian Country in the context of a murder of one non-Indian by another non-Indian on the Ute reservation in Colorado. *McBratney*, 104 U.S. at 621. Despite two statutes seemingly dictating a contrary result, the Court held that the State of Colorado had "exclusive jurisdiction" over the crime. *Id.* at 623-24. The first statute granted federal jurisdiction over murder committed within the exclusive jurisdiction of the United States, while the other, the predecessor to the Indian Country Crimes Act, provided that "general laws of the United States as to the punishment of Crimes committed on any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to Indian country." *Id.* at 621-22. In holding that Colorado had exclusive jurisdiction, the Court explained that Colorado had entered the United States on "equal footing with the original States in all respects whatsoever" and as such had "acquired criminal jurisdiction over its own citizens and other white

[15] To the extent the OCCA determined that Petitioner was not an Indian, this is a factual determination to which this court must defer. *Black*, 682 F.3d at 896-97.

persons throughout the whole of the territory within its limits." *Id.* at 624. Accordingly, absent a specific treaty granting the federal government jurisdiction over crimes against non-Indians by non-Indians, federal courts lacked authority to punish such crimes within the reservation. *Id.*

The Supreme Court has repeatedly reaffirmed its holding from *McBratney*, first doing so in *Draper*, 164 U.S. at 240. There the Court considered language from the Enabling Act and Constitution of Montana which is nearly identical to the language contained in the Enabling Act of Oklahoma, Fifty-ninth Congress, Sess. 1, Ch. 3335, p. 279-80, and Article 1 § 3 of the Oklahoma Constitution. *See* 11 Okla. Op. Att. Gen. 345, *2 (1979). Following a review of this language, the *Draper* Court concluded:

> As equality of statehood is the rule, the words relied on here to create an exception cannot be construed as doing so, if, by any reasonable meaning, they can be otherwise treated. The mere reservation of jurisdiction and control by the United States of 'Indian lands' **does not of necessity signify a retention of jurisdiction** in the United States to punish all offenses committed on such lands by others than Indians or against Indians.

*Draper*, 164 U.S. at 244-45 (emphasis added). The *Draper* court further clarified that the language at issue, reserving jurisdiction and control over Indian lands to the United States, "was not intended to deprive that state of power to punish for crimes committed on a reservation or Indian lands by other than Indians or against Indians. . . ." *Id.* Similarly here, the nearly identical language contained in the Oklahoma Enabling Act, and Art. I § 3 of the Oklahoma Constitution likewise does not deprive the State of Oklahoma of its authority to try non-Indians for crimes against non-Indians within Indian Country. *See id.*

Notably, the Supreme Court further reaffirmed and extended its holding from *McBratney* in the context of Oklahoma's authority to prosecute non-Indian on non-Indian crime. *Ramsey*, 271 U.S. at 469. While the Court ultimately held that the federal government had the authority to

prosecute the crime in that case because it was committed against an Indian, the court confirmed, "the authority of the United States . . . to punish crimes occurring within the State of Oklahoma, not committed by or against Indians, **was ended by the grant of statehood**." *Id.* at 469 (emphasis added) (citing *McBratney*, 104 U.S. at 624 & *Draper*, 164 U.S. at 240).

Here, Petitioner does not claim that either he or T.R. are Indian, nor that the OCCA's determination on certiorari appeal that neither of them were Indian was an unreasonable factual determination (Doc. 2 at 19-29).[16] As such the State of Oklahoma was the only entity with the authority to prosecute him. *See id.*; *Ramsey*, 271 U.S. at 469; *Draper*, 164 U.S. at 240-46; *McBratney*, 104 U.S. at 621-24. This is so even accepting that Petitioner's crimes occurred in Indian country, as the Supreme Court has repeatedly held that the federal government has no authority to prosecute crimes involving only non-Indians, even when those crimes occur in Indian country. *Ramsey*, 271 U.S. at 469; *Draper*, 164 U.S. at 240-46; *McBratney*, 104 U.S. at 621-24;. Accordingly, based on the above survey of Supreme Court authority, the OCCA's decision denying his certiorari appeal is entirely consistent with the clearly established federal law on this issue (Ex. 1 at 4-7).

Moreover, despite Petitioner's arguments to the contrary,[17] the Supreme Court's recent decision in *Castro-Huerta*—decided before the OCCA's Order Denying Certiorari—entirely refutes his argument. There, the Court expressly stated that neither the General Crimes Act nor

---

[16] Further, the OCCA's determination is a factual determination to which this court must defer. *Johnson*, 2022 WL 97080, at *4.

[17] Indeed, Petitioner relies on the Oklahoma Enabling Act (Doc. 2 at 28) and claims that the decision in *Castro-Huerta* did not consider any prior treaties with the Cherokee Nation (Doc. 2 at 28-29). But this ignores that the Supreme Court expressly considered the Oklahoma Enabling Act, as well as similar treaties, in determining that the State of Oklahoma has concurrent jurisdiction with the federal government in cases of even non-Indian on Indian crime. *See infra.*

Public Law 280, nor any other law or treaty or application of the *Bracker*[18] balancing test, "preempts preexisting or otherwise lawfully assumed state authority to prosecute crimes committed by non-Indians against Indians in Indian country." *Castro-Huerta*, 597 U.S. at 639. Accordingly, the Court reasoned that "[u]nder the General Crimes Act, . . . **both** the Federal Government and the State have **concurrent jurisdiction** to prosecute crimes committed in Indian country [by non-Indians against Indians]." *Id.* at 639-40 (emphasis added). Furthermore, the Court explained that if Castro-Huerta's construction of the General Crimes Act were correct, "the Act would preclude States from prosecuting **any** crimes in Indian country—presumably even those crimes committed by non-Indians against non-Indians[.]" *Id.* at 641 (emphasis in original). Additionally, the Court similarly rejected the claim that Public Law 280 preempted State jurisdiction over non-Indian on Indian crime, writing, "[n]othing in the language or legislative history of Pub. L. 280 indicates that it was meant to divest States of pre-existing and otherwise lawfully assumed jurisdiction." *Id.* at 647-48 (quoting *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g*, *P.C.*, 467 U.S. 138, 150 (1984)).

Moreover, the Court also held that various pre-Statehood treaty provisions[19] did not deprive Oklahoma of jurisdiction. *Castro-Huerta*, 597 U.S. at 653-54. The Court explained:

> Straying further afield, the dissent seizes on treaties from the 1800s. But those treaties do not preclude state jurisdiction here.
>
> . . .
>
> **[H]istory and legal development did not end in 1866**. Some early treaties may have been consistent with the . . . theory of separateness. But as relevant here, those treaties have been supplanted: Specific to Oklahoma, those treaties, in relevant part,

[18] *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980).

[19] If the treaty provisions at issue in *Castro-Huerta* did not deprive the State of prosecutorial authority, neither can those relied on by Petitioner (Doc. 2 at 19-29).

> **were formally supplanted no later than the 1906 Act enabling Oklahoma's statehood.** As this Court has previously concluded, admission of a State into the union **necessarily repeals the provisions of any prior statute, or of any existing treaty that is inconsistent with the State's exercise of criminal jurisdiction** throughout the whole of the territory within its limits, including Indian country, unless the enabling act says otherwise by express words. The Oklahoma Enabling Act contains no such express exception. Therefore, at least since Oklahoma's statehood in the early 1900s, Indian country has been part of the territory of Oklahoma.

*Id.* (internal citations omitted) (emphasis added) (citing *McBratney*, 104 U.S. at 623-24). As such, the Supreme Court's decision in *Castro-Huerta* explicitly, and in no uncertain terms, refutes Petitioner's claim that the State was without authority to prosecute him. *Id.*

Accordingly, even assuming this claim is reviewable, Petitioner fails to show that the OCCA's denial of certiorari relief was contrary to or an unreasonable application of the clearly established Supreme Court law, or that the decision was legally or factually unreasonable. *Williams*, 529 U.S. at 405-06.

**D. Conclusion**

For these reasons, habeas relief should be denied on Ground III. 28 U.S.C. § 2254(d); *Id.*

## CONCLUSION

Based on the above and foregoing law and reasoning, federal habeas corpus relief is unwarranted. Petitioner's petition for federal habeas corpus relief should therefore be denied in its entirety by this Court.

Respectfully submitted,

**GENTNER F. DRUMMOND**
**ATTORNEY GENERAL OF OKLAHOMA**

**s/ Michel A. Trapasso**
**MICHEL A. TRAPASSO, O.B.A. #35298**
**ASSISTANT ATTORNEY GENERAL**
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3002
Fax: (405) 522-4534
**Service email: fhc.docket@oag.ok.gov**

**ATTORNEYS FOR RESPONDENT**

## CERTIFICATE OF SERVICE

**X** I hereby certify that on October 15, 2024, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Debra K. Hampton

s/ Michel A. Trapasso